## 8627

### EX PARTE MASSEE.

1. THE REQUISITION papers in this case are held to comply with the requirements of the Federal statutes. The objection that the certificate of the clerk of the Tennessee Court is to the effect that there is no indictment except what appears in the Court minutes is untenable.

2. IBID.—HABEAS CORPUS—BAIL.—The duty of the Court under writs of *habeas corpus* in extradition cases is simply to inquire if the requisitions of the Federal statutes have been met and pending that investigation bail should not be granted unless some departure from the Federal law has been made to appear. In such investigation the Courts of the asylum State should not inquire into the motive of the prosecution in the demanding State.

3. IBID.—IBID.—IBID.—Where requisition papers are regular on their face every intendment should be indulged in favor of their validity, but where the prisoner has made the *prima facie* showing that they are not regular, he may be admitted to bail pending the final hearing.

4. IBID.—BAIL.—Should bail be given in extradition proceedings without notice to the State?

5. IBID.—EVIDENCE.—AFFIDAVITS of third persons that the governor of the demanding State had stated to affiants that he did not sign the requisition papers, should not be admitted to impeach the validity of the requisition.

6. IBID.—IBID.—A telegram from the demanding governor to the asylum governor and one from this governor to the Court should be considered only as an inducement to continue the investigation until the demanding governor could formally declare his position.

7. IBID.—The validity of extradition proceedings should not be adjudged without the presence of the body of the prisoner before the Court, whether he is on bail or not.

Before SEASE, J:, Spartanburg.    Reversed.

Application by W. J. Massee for discharge under writ of *habeas corpus* from arrest under requisition from the Governor of Tennessee.    State appeals.

*Messrs. Attorney General Frierson,* of Tennessee, *H. S. Stokes* and *Nichols & Nichols,* for appellant.

*Messrs. Jno. Gary Evans, C. C. Wyche* and *Sanders & DePass,* contra.

July 26, 1913.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    The petitioner, W. J. Massee, was arrested by sheriff of Spartanburg county under the mandate of his Excellency, Cole. L. Blease, Governor of South Carolina, issued on the 25th day of July, 1912, in accordance with a requisition from his Excellency, Ben W. Hooper, Governor of Tennessee. On the same day, upon the application of Massee, Hon. T. S. Sease, Circuit Judge, issued a writ of *habeas corpus* returnable in the afternoon of that day. The sheriff made return to the writ, "that W. J. Massee is held in my custody, under telegram from Governor Cole. L. Blease and warrant issued by magistrate A.

H. Kirby, charged with making threats and using duress to induce Robert Williams to dismiss an action in United States Court." The record contains this statement of the proceedings before Judge Sease: "Counsel for the petitioner then moved that the petitioner be admitted to bail pending the hearing of the foregoing writ. Counsel for the State objected on the ground that the statutory four days' notice had not been given. This objection was overruled, and his Honor passed the following order admitting Massee to bail, his Honor ruling and holding that appellant was entitled to four days' notice; but that he would admit the petitioner to bail in the meantime." Accordingly, an order was made that Massee be discharged from custody on giving bond in the sum of $10,000, conditioned for his appearance before Judge Sease on the 27th day of July, 1912. The bond was made and Massee was discharged. In the meantime, on the 26th of July, Governor Blease, having received a telegram signed by Governor Hooper stating that the requisition had been signed by mistake and was revoked, requested Judge Sease to continue the hearing until Governor Hooper's telegram could be authenticated under the seal of the State of Tennessee. An order was accordingly made postponing the hearing until the 7th of August, and requiring Massee to appear in person before Judge Sease on the 7th of August at 10:30 in the forenoon, and continuing the bond in force until that time. In passing this order, Judge Sease considered, without objection of counsel, the telegram of Governor Blease to him, the telegram of Governor Hooper to Governor Blease, and a telegram from James B. Cox, Esq., of Knoxville, to Massee stating that Governor Hooper had promised to revoke the requisition.

Massee did not appear on the 7th of August, pleading illness as an excuse, and his counsel presented a paper, purporting to be signed by Massee, waiving his right to be present at the *habeas corpus* proceedings. Counsel for the State of Tennessee objected to the hearing in the absence of the

petitioner on the grounds: "(a) That the bond was con-
ditioned upon the personal appearance of the petitioner, W.
J. Massee, before his Honor, and upon the failure of the
petitioner, to enter his appearance in person, the condition of
the bond was broken; (b) that in a *habeas corpus* proceeding
in which the *ex vi termini* and as the law directs the body of
the petitioner must be brought into Court, the personal
appearance of the petitioner was a duty and not a personal
right which could be waived." Overruling these objections,
Judge Sease proceeded with the hearing, and admitted for
his consideration in the matter the telegram from Governor
Hooper to Governor Blease purporting to revoke the requi-
sition, the telegram from James B. Cox, Esq., to Massee
stating that Governor Hooper had promised to revoke the
requisition, and an affidavit of W. D. McNeil to the effect
that, in a conversation with him, Governor Hooper gave his
reasons for reinstating the requisition and stated that he did
not previously sign the requisition.

In overruling the objection to all these documents made
on the ground that they were mere hearsay, and that the
formal requisition of the governor of a State was not sub-
ject to collateral attack in this manner, and that counsel were
taken by surprise and had no opportunity to meet the state-
ments of the affidavits of McNeil, Judge Sease held "that as
such had been introduced before him and considered by him
when he passed the order extending the time for the hearing,
they were already in, and would be considered by him, as
they were referred to in an order previously passed by him
in this matter." Counsel for the prosecution then produced
a telegram from Governor Hooper to Governor Blease,
dated July 26, 1912, withdrawing the message of the day
before purporting to revoke the requisition.

Upon this showing, after argument, Judge Sease made the
following findings and judgment: "1. That the requisition is
irregular on its face and not in conformity with the act of
Congress relating thereto, in that no copy of the indictment

found by the Courts of Tennessee as required by law was produced.   2.  I find as a matter of fact, that the requisition was not authorized by the Governor of Tennessee, but the same was issued without authority, and is, therefore, null and void.   It is, therefore, ordered and adjudged that the prisoner, W. J. Massee, be discharged from the custody of the sheriff and his recognizance cancelled of record and that he be allowed to go hence without delay."

The validity of the requisition from the Governor of Tennessee depends on whether the papers transmitted by him to Governor Blease were made out as required by the Federal statute; and we think that Judge Sease was clearly in error in holding that they were on their face irregular and defective.

The statute provides: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or affidavit made before a magistrate of any State or Territory charging the person demanded of having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secure him, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear." Revised Statutes of United States, sec. 5278.   The objection sustained was that no copy of the indictment found by the Courts of Tennessee was produced.   The record before us shows that the copy of an indictment charging a crime under the laws of the State of Tennessee was attached to the requisition, and certified therein by Governor Hooper to be authentic.   The objection that the certificate of the clerk of

the Circuit Court stated that the paper purporting to be an indictment was a copy of the minutes of the Court, and not of the indictment, has no foundation. Even under the strictest verbal test, the certificate can bear no other construction than that the indictment appears in the minute book, and that the indictment itself, not the minute book, was on file in the clerk's office. There can be no doubt that the requisition papers were, on their face, regular in every respect.

The assigned error next in sequence is the admission of the petitioner to bail pending the hearing, without notice to the attorneys representing the prosecution. The question made is not now a practical one, for the bail bond was taken and the petitioner released, and it would be impossible for this Court to restore the status existing before the bond was taken. But since the point is important, we may state our views of it. Legislation in respect to extradition of fugitives from one State to another being within the power of Congress, the regulations fixed by Federal statutes are paramount to State Constitutions and statutes, and all that a State Court can do under *habeas corpus* proceedings is to determine whether the conditions prescribed by the Federal Constitution and statutes have been complied with. If they have not, the Court may release absolutely or on bail, according to its discretion.

The general rule in *habeas corpus* proceedings is well established that pending a final hearing the Judge or Court may admit to bail. *Barth* v. *Clive,* 79 U. S. 400, 20 L. Ed. 393; *In re Kaine,* 14 Howard 134. But extradition laws are enacted on the presumption that the State making the demand will accord to the fugitive his right to bail and all other legal rights; and when it is remembered that the power of the Court or Judge under *habeas corpus* is necessarily limited to the inquiry, whether the conditions of the Federal laws have been met, it seems obvious that bail should not be allowed pending the hearing, unless some departure from the Federal law has been made to appear. On this point, the

reasoning of the Supreme Court of the United States on the subject of international extradition, applies with equal force to State extradition. In *Wright* v. *Henkel*, 190 U. S. 40, 47 L. Ed. 948, Chief Justice Fuller said: "The demanding government, when it has done all that the treaty and the law requires it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligations to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment. And the same reasons which induced the language used in the statute would seem generally applicable to release pending examination." *Ex parte Wall*, 84 Miss. 783, 38 So. 628; *Ex parte Hobbs*, 32 Tex. Cr. Rep. 312, 40 Am. St. Rep. 782; *In re Foye*, 21 Wash. 250, 57 Pac. 825, 19 Cyc. 96.

But under *habeas corpus* proceedings the Courts may inquire whether the prisoner really falls under the conditions of the Federal statute; that is, whether he is subject to extradition. For example, they may ascertain whether the prisoner is the person charged, whether he is a fugitive from justice, whether the papers show that he was in the demanding State at the time the offense was committed, and whether the act charged was a crime against the laws of the demanding State; but judicial inquiry cannot extend to the motive of the proceedings. The Supreme Court of the United States in *Robb* v. *Connelly*, 111 U. S. 624, 28 L. Ed. 542, declared the power of the State Courts to inquire under the writ of *habeas corpus* whether the statutes of the United States have been complied with, using this language: "What we decide—and the present case requires nothing more—is, that, so far as the Constitution and laws of the United States are concerned, it is competent for the Courts of the State of California, or for any of her Judges—having power,

21—95

under her laws, to issue writs of *habeas corpus,* to determine, upon writ of *habeas corpus,* whether the warrant of arrest and the delivery of the fugitive to the agent of the State of Oregon, were in conformity with the statutes of the United States; if so, to remand him to the custody of the agent of the State of Oregon:"

In *Pearce* v. *Texas,* 155 U. S. 311, 39 L. Ed. 164, the Court approved of the action of the Courts of the asylum State in leaving to the Courts of the demanding State the protection of the prisoner in his constitutional rights.

In *Hyatt* v. *New York,* 188 U. S. 691, 47 L. Ed. 657, it was held that the Court might discharge the prisoner when it appeared on the face of the extradition papers that he was not in the demanding State at the time the crime was committed; but in *Munsey* v. *Clough,* 196 U. S. 364, 49 L. Ed. 515, the Court said: "But the Court will not discharge a defendant arrested under the Governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the State, as *habeas corpus* is not the proper proceeding to try the question of *alibi,* or any question as to the guilt or innocence of the accused."

The Court held in *Pettibond* v. *Nichols,* 203 U. S. 192, 51 L. Ed. 148, that the inquiry in *habeas corpus* whether the prisoner was a fugitive from justice could not extend to an inquiry into his guilt or innocence, saying that, "the constitutional and statutory provisions referred to were based upon the theory that, as between the States, the proper place for the inquiry into the question of the guilt or innocence of an alleged fugitive from justice is in the Courts of the State where the offense is charged to have been committed."

In *Pierce* v. *Creecy,* 210 U. S. 387, 52 L. Ed. 1113, Mr. Justice Moody lays down the limitation of the judicial power of inquiry in *habeas corpus* in this language: "This Court in the cases already cited, has said, somewhat vaguely but with as much precision as the subject admits, that the indictment, in order to constitute a sufficient charge of crime to warrant

interstate extradition, need show no more than that the
accused was substantially charged with crime. This indict-
ment meets and surpasses that standard, and is enough. If
more were required it would impose upon Courts, in the trial
of writs of *habeas corpus,* the duty of a critical examination
of the laws of a State with whose jurisprudence and criminal
procedure they can have only a general acquaintance. Such
a duty would be an intolerable burden, certain to lead to
errors in decision irritable to the just pride of the States and
fruitful of miscarriage of justice. The duty ought not to be
assumed unless it is plainly required by the Constitution,
and, in our opinion, there is nothing in the letter or the spirit
of that instrument which requires or permits its perform-
ance."

These statements of the principle involved, by the tribunal
to whose authority, in questions of this kind, all other Courts
must yield, have made clear the principle that the authority
of the Courts, in extradition proceedings, does not extend to
inquiry into the motive, or into the merits of the case in any
respect. The Supreme Court of this State and other State
Courts of high authority have explicitly laid down the same
limitation.

In *Ex parte Swearingen,* 13 S. C. 74, Mr. Justice McIver,
with his usual force and clearness, thus states the rule: "It
seems to us that the true rule is that when a requisition
comes to the Governor of this State for any person found in
this State, which shows upon its face that all the require-
ments of the act of Congress have been complied with, it is
the duty of the proper authorities of this State to recognize
the statements of fact made therein as true, and to surrender
to the agent of the State making the demand the person
demanded, in the fullest confidence that he will receive ample
justice at the hands of the authorities of such State. The
very fact that there is no mode of enforcing the performance
of the duty imposed upon the Governor of the State upon
which the demand is made, by *mandamus* or otherwise

(*Kentucky* v. *Dannison, supra*), makes it all the more obligatory that he should be scrupulous and exact in the performance of such duty, and that the Courts should not lend their aid to defeat the provisions of the Constitution so essential to the preservation of that good will which ought always to exist between sister States, by demanding more than is required by the act of Congress." *In re Sulton,* 115 N. C. 57, 44 Am. St. Rep. 433; *Barrenger* v. *Baum,* 103 Ga. 465, 68 Am. St. Rep. 113; *Singleton* v. *State* (Ala.), 42 So. 23; *Ex parte Edwards* (Miss.), 44 So. 827; *Ex parte Berrynell* (Iowa), 133 N. W. 1057. See, also, extended note 57 Am. Dec. 395, 21 Cyc. 329.

Another established and obvious principle is that when the extradition papers are regular on their face every intendment is to be indulged in favor of their validity, and the burden is on the prisoner to show that some one of the conditions of extradition prescribed by the statutes, as above indicated, have not been met. *Marbles* v. *Creecy,* 215 U. S. 63, 54 L. Ed. 92. When the prisoner has made that *prima facie* showing, the Court or Judge issuing the writ may admit him to bail pending the final hearing on the writ.

Applying these settled rules, it is perfectly clear that the Circuit Judge erred in admitting the prisoner to bail pending the final hearing. When the application was made, the showing before the Judge consisted of the requisition papers of the Governor of Tennessee, and the mandate of the Governor of South Carolina, all made out in accordance with the statute, and the verified petition of the prisoner. This petition contained nothing but statements that he intended to show that, while the prisoner had violated the criminal laws of Tennessee, he was guilty of no moral wrong, that the prosecution was a hardship on him, that it was instituted to collect a debt, and that the Governor of Georgia had refused to issue a requisition. All this had no tendency to show that the extradition statute had not been complied with, and,

therefore, under the principles just stated and the authorities sustaining it, furnished no ground whatever for the discharge of the prisoner on bail. This being so, the law required that the petitioner should be remanded to the custody of the sheriff to be thereafter surrendered to the State of Tennessee, according to the mandate of the Governor of the State of South Carolina, unless at the future hearing, ordered for 27th of July, a successful attack should be made on the regularity of the proceedings.

It was further contended, on appeal, that the Circuit Judge erred in admitting the petitioner to bail without four days' notice to the counsel representing the prosecution. The State statute provides: "When it appears, from the return of the writ or otherwise, that the party is imprisoned on a criminal accusation, he shall not be discharged until sufficient notice has been given to the Attorney General, or Circuit Solicitor, or other attorney acting for the State, that he may appear and object to such discharge, if he think fit." We are not now concerned with the question whether a Judge may not grant bail in cases of emergency, when the prisoner is entitled to bail, under the Constitution, as a matter of course, the only question, being as to the amount. Here, as we have seen, he was not entitled to bail as a matter of course, but only when a *prima facie* showing of noncompliance with the requisition statute should be made and in such a case, while the statute does not prescribe the time, its clear import is that counsel shall have sufficient notice to enable them to resist the application for bail. The time is in the discretion of the Circuit Judge; but we think that there is strong reason for the position that it was error of law for the Circuit Judge to grant bail to a prisoner held on extradition proceedings, against the objection of counsel for the prosecution, on a few hours' notice. As the Court is not unanimous however on that point and its decision is not necessary in this case, it is left undecided. We hold that the Circuit Judge was in error when he granted

bail, because, on the showing before him, the petitioner was
not entitled to bail.

The Circuit Judge erred, also, in admitting as evidence to
impeach the requisition of the Governor of Tennessee, sol-
emnly made over his official signature and under the great
seal of the State, mere affidavits of outside persons,
to the effect that the Governor of Tennessee had told
them that he had not signed the requisition. No
argument or authority need be adduced to show that such a
method of impeaching an official document is not only con-
trary to the rules of evidence, but would be an intolerable
impugning by the judiciary of the most solemn communica-
tions between the highest executives of sovereign States.

On the other hand, the Circuit Judge was clearly right in
considering the telegram from Governor Blease, and that
from Governor Hooper to Governor Blease indicating a
withdrawal of the requisition. But even these tele-
grams were not sufficient authority to warrant the
Circuit Judge's holding that the requisition had been
revoked. They were of value only as justifying a continu-
ation of the hearing to a future day, so as to give Governor
Hooper an opportunity to withdraw his requisition by a
formal communication to Governor Blease to that import.
Governor Blease expressed accurately the force to be given to
them when he requested Judge Sease to continue the *habeas
corpus* proceedings until he could get the substance of the
telegrams authenticated under the seal of the State of Ten-
nessee. This was no doubt the view of the Circuit Judge
also who had before him, in addition to the documents above
referred to, a communication from Governor Hooper to
Governor Blease withdrawing the message of revocation, for
he does not rest his order of discharge on the ground that
the requisition had been withdrawn.

The final question is whether there was error in consider-
ing and adjudicating the petition, and discharging the peti-
tioner in his absence. The petitioner did not appear accord-

ing to the terms of the bond, but submitted a physician's affidavit to the effect that he was too sick to leave his home in the city of Macon. Whether this affidavit was sufficient to warrant a further continuance would have been in the discretion of the Circuit Judge, if the petitioner had been properly discharged; but the principle is well settled in this State that when an accused person gives bail for his appearance at a future time for the adjudication of the question whether his body shall be held in custody or released, he cannot have his right to discharge adjudicated, unless he is actually in the presence of the Court or in the custody of an officer subject to the Court's order. If he fails to appear without legal excuse, his bail will be forfeited, and his application for the inquiry as to the legality of his arrest and detention will be considered abandoned. If he offers sufficient excuse for not appearing, then the cause must be continued until it is possible for him to appear. In *habeas corpus* proceedings, the whole matter before the judicial officer is whether the accused shall be released or remanded to custody. Unless he is present in person or subject to the order of the Court, it is manifest the Court cannot make effective its judgment against the person. A preliminary hearing demanded by the prisoner falls under the same principle. In considering the point, as applied to a preliminary hearing, the Court said in *State* v. *Rabens,* 79 S. C. 542, 60 S. E. 442: "A preliminary examination must have one of three results, dependent on the decision of the magistrate; the discharge of the defendant; the taking of bail for his appearance to answer the indictment; or his imprisonment. It may be the magistrate in the absence of the defendant could adjudge his discharge, but to take bail from the defendant or commit him to jail, it was manifestly necessary for him to be present in person. The defendant could not demand that the magistrate go through the empty form of conducting an examination which could have no efficient result. By failing to appear in person, he had for-

feited the recognizance (*State* v. *Minton,* 19 S. C. 280), and he waived his preliminary examination when by voluntary absence he made it impossible for the magistrate to enforce his judgment."

The judgment of this Court is that the order of Judge Sease be reversed, and that the petitioner be required to appear in person before Judge Sease on a day to be designated by him, and that he then be remanded to the custody of the sheriff of Spartanburg county to be surrendered to the proper officer of the State of Tennessee, unless it shall officially appear that the requisition of the Governor of Tennessee or the mandate of the Governor of the State of South Carolina has been revoked.

Reversed.

*Remittitur held up for thirty days to permit appellant to obtain writ of error to United States Supreme Court.*