THE STATE OF NEVADA, PETITIONER, *v.* SECOND JUDICIAL DISTRICT COURT, STATE OF NEVADA, COUNTY OF WASHOE, RESPONDENT.

No. 6205

July 1, 1970                                          471 P.2d 224

[Rehearing denied August 18, 1970]

*Harvey Dickerson,* Attorney General; *Daniel R. Walsh,* Chief Deputy Attorney General; and *Michael Melner,* Deputy Attorney General, of Carson City, for Petitioner.

*Peter Echeverria* and *Eli Grubic,* of Reno, and *Harry E. Claiborne* and *Annette R. Quintana,* of Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

We have been asked in this certiorari proceeding to review the order of the district judge granting bail to Jack Van Sickle, who is a fugitive from justice from the State of California, where he has been charged with conspiracy to murder six persons, a capital offense under sections 182.1, 187, and 190 of the California Penal Code.[1] He was charged by criminal complaint on December 2, 1969, in the Municipal Court, Modesto

---

[1]West's Ann. Cal. Penal Code § 182:

"If two or more persons conspire:

"1. To commit any crime.

". . . .

"They are punishable as follows:

"When they conspire to commit any crime against the person of any official specified in subdivision 6, they are guilty of a felony and are punishable by imprisonment in the state prison for not less than 10 years.

"When they conspire to commit any other felony, they shall be punishable in the same manner and to the same extent as is provided for the punishment of the said felony. . . ."

West's Ann. Cal. Penal Code § 187:

"Murder is the unlawful killing of a human being, with malice aforethought."

West's Ann. Cal. Penal Code § 190:

"Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the court or jury trying the same, and the matter of punishment shall be determined as provided in Section 190.1, and every person guilty of murder in the second degree is punishable by imprisonment in the state prison from five years to life."

Judicial District, County of Stanislaus, State of California, and a warrant for his arrest was issued on that date.

Van Sickle was apprehended in Nevada as a fugitive and was committed to jail to enable his arrest "under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense," as provided in NRS 179.207 of the Uniform Criminal Extradition Act.[2] Since the crime with which Van Sickle was charged was punishable by death or life imprisonment under the laws of the demanding state, California, he was denied bail pending the issuance of the governor's warrant. NRS 179.209.[3] On February 16, 1970, the Governor of Nevada issued an executive warrant commanding the Nevada authorities to deliver Van Sickle to a designated California agent, so that he could be conveyed to California to stand trial in that state.

The Uniform Criminal Extradition Act provides, however, that before such a transfer of custody may be effected the defendant named in the extradition warrant must be taken before a judge of a court of record, who shall inform him of his rights and, in particular, advise the defendant that he may test the legality of his arrest by habeas, and that if he so desires, he shall be allowed a reasonable time within which to do so before he is delivered to the agent from the demanding state. NRS 179.197.[4] Van Sickle indicated his desire to file a

---

[2]NRS 179.207:

"If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged and, except in cases arising under NRS 179.189, that he has fled from justice, the judge or magistrate must, by a warrant reciting the accusation, commit him to the county jail for such a time, not exceeding 30 days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused gives bail as provided in NRS 179.209, or until he is legally discharged."

[3]NRS 179.209:

"Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, a judge or magistrate in this state may admit the person arrested to bail by bond, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond, and for his surrender, to be arrested upon the warrant of the governor of this state."

[4]NRS 179.197:

"1. No person arrested upon such warrant [governor's warrant of arrest] shall be delivered over to the agent whom the executive authority demanding him has appointed to receive him unless he is first taken

habeas petition as so provided, and he did so on March 16, 1970. In addition, he filed a "Petition for Admission to Bail" on the same day. The district judge granted the latter petition and fixed bail in the sum of $10,000, from which order the State seeks review, claiming that the district judge exceeded his jurisdiction in entering the order. We agree.

NRS 179.209 of the Uniform Criminal Extradition Act, supra, provides that a fugitive may be admitted to bail in all cases, unless the offense charged is punishable by death or life imprisonment, pending the issuance of the governor's warrant for the fugitive's arrest. The statute makes no provision for bail after the governor has issued his warrant.[5] Van Sickle argues, however, that the statutory mandate denying bail in extradition proceedings in capital cases extends only until the issuance of the governor's warrant; and that therefore, regardless of the offense charged, a fugitive may be admitted to bail. We do not agree. Although NRS 179.209 of the Uniform Criminal Extradition Act sets forth the conditions when a fugitive may be admitted to bail during extradition proceedings, it covers only the period from the fugitive's arrest to the issuance of the governor's warrant, and not the period thereafter. We do not interpret such silence as an indication by the Legislature that *all* fugitives may, *after* the issuance of the governor's warrant, be admitted to bail. If a fugitive under the Act who has been charged with a capital crime in the demanding state may not be admitted to bail prior to the issuance of the governor's warrant, the presumption is much stronger that bail should be precluded *after* the issuance of the governor's warrant. Other jurisdictions have so held. In Allen v. Wild, 86 N.W.2d 839, 841–842 (Iowa 1957), a case where the fugitive was arrested on an

forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel.

"2. If the prisoner or his counsel state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.

"3. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the agent of the demanding state."

[5]Indeed, Van Sickle petitioned the district judge for bail after he was apprehended as a fugitive and prior to the issuance of the governor's warrant. His request for bail was denied. NRS 179.209, supra.

executive warrant and admitted to bail, as in this case, the court said:

"The right of interstate extradition is founded in Section 2, Article IV, of the Constitution of the United States, which provides: 'A Person charged in any State with * * * Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.' Pursuant thereto, effectuating federal statutes have been adopted and what is now Chapter 759, Code of Iowa, 1954, I.C.A. entitled, Uniform Criminal Extradition Act, has been enacted. [Citations.]

". . . With reference to extradition, section 759.16 provides that the prisoner, unless charged with an offense punishable by death or life imprisonment under the laws of the demanding state, may be admitted to bail by bond. However this section is applicable only while the person is being held to await requisition and before the warrant for his arrest is issued by the Governor. *The chapter contains no similar provision for bail after the arrest upon such warrant. Hence it may be fairly inferred the omission of such provision was intentional."* (Emphasis added.)

The Arizona Supreme Court in Waller v. Jordan, 118 P.2d 450, 452 (Ariz. 1941), a case analogous to the instant one, ruled:

"It will be noticed that if the county attorney on behalf of the state appeals, the court may admit the petitioner to bail pending the appeal. If, however, the petitioner appeals from the order refusing his discharge, the statute is silent as to his right to bail. We think when the legislature in one instance gives the right to bail pending the appeal but fails to give any right to bail in the other instance, it is equivalent to denying the right to bail in the latter case." See also 2 Sutherland, Statutory Construction § 4915 (3d ed. 1943).

Again, in State ex rel. Stringer v. Quigg, 107 So. 409, 411 (Fla. 1926), the court held:

"Authority for interstate rendition of fugitives by extradition emanates solely from the power delegated to the federal government by the Constitution of the United States. . . . Legislation as to interstate rendition of fugitives being within the power of Congress, the federal law upon that subject is paramount to state Constitution and statutes. [Citation omitted.] When the executive warrant of rendition has been issued, the fugitive is then held solely upon that authority. His detention is

not for the purpose of trying him in the courts of this state, for he is charged with no offense against our laws, but he is apprehended and detained for the sole purpose of rendition to the demanding state."

Van Sickle argues that article 1, section 7, of the Nevada Constitution[6] is controlling in his case and that therefore he has a constitutional right to bail.[7] This argument has been well answered in State ex rel. Stringer, supra, 107 So. at 412, where the court ruled:

"This provision of the Constitution of Florida [a provision identical to Nevada's but for the immaterial substitution of the word "except" for "unless"], one of the greatest bulwarks of personal liberty, should not be narrowly or illiberally construed. On the other hand, it should not be enlarged beyond its plain sphere of operation. The quoted provision of our Declaration of Rights, except as to those persons expressly excluded by its terms, unquestionably affords the right to bail to all persons who are charged with or who may be convicted of crime under the laws of the state of Florida, but in the present state of the law we do not regard its provisions as applicable to one who is charged with an offense under the laws of another state, and who is before the courts of this state for the sole purpose of determining the lawfulness of his detention under an executive warrant of extradition, under which latter process this state holds him for rendition to the demanding state, and for no other purpose. Extradition laws are enacted upon the presumption that the demanding state will accord the fugitive his right to bail, and all other legal rights. When a fugitive is held under executive warrant of extradition, it is entirely appropriate and just that his right to bail be tested by the laws of the demanding state, where he is charged with crime, and where his guilt or innocence must be judicially determined, and not by the laws of the asylum state which holds him solely for the purpose of rendition."

Likewise, in Waller v. Jordan, supra, the court held, 118 P.2d at 452:

---

[6]Nevada Const., art. 1, § 7:

"All persons shall be bailable by sufficient sureties; unless for Capital Offenses when the proof is evident, or the presumption great."

[7]Even when a defendant is charged with a capital case in Nevada, the usual procedure is not to grant bail until after the preliminary hearing has been held and the magistrate has had an opportunity to review the evidence offered by the state to determine whether "the proof is evident, or the presumption great." The impracticability of such a review and determination by a Nevada magistrate when the case originates in and is prosecuted by a sister state is patently obvious.

"Appellant points to section 22, Article II of the state Constitution reading: 'All persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great.' [Again, a provision identical to Nevada's but for the immaterial substitution of the word "except" for "unless."] and insists that it gives him the right to bail pending his appeal. . . . *It should be remembered that this provision and all others of our constitution relating to criminal proceedings have application only to those crimes over which the state authorities have jurisdiction by virtue of their having been committed in the state.*" (Emphasis added.)

The reason for the rule has been well expressed in Buchanan v. State ex rel. Weiss, 166 So.2d 596, 597 (Fla.App. 1964):

". . . One of the reasons supporting the rule against granting bail in extradition cases where the fugitive has been reduced to custody by the execution of a governor's rendition warrant, is because the offense is not one cognizable in the courts of the asylum state, whereas the demanding state has all of the facilities to determine the gravity of the offense, the amount of bail, if any, and the conditions thereof. Here there is no restraint on the respondent's leaving the jurisdiction. The integrity of the processes of the courts of Florida as well as the solemnity and dignity that we should accord the request of a demanding sister state, places in jeopardy the ability of this state to produce the prisoner for delivery to the demanding state when that time arrives."

See also Ex parte Campbell, 23 N.W.2d 698 (Neb. 1946); Tomarchin v. Kelly, 118 So.2d 788 (Fla.App. 1960); Llerandi v. Blackburn, 97 So.2d 247 (Fla. 1957); Ex parte Massee, 79 S.E. 97 (S.C. 1913); Annot., 56 A.L.R.2d 668 (1957).

We therefore vacate the order of the district judge admitting Van Sickle to bail as having been entered without jurisdiction.

COLLINS, C. J., and BATJER, J., concur.

THOMPSON, J., with whom ZENOFF, J., concurs, dissenting:

This original proceeding in certiorari tests the power of the district court to grant bail to a fugitive from justice charged with having committed a capital offense in a sister state.

By criminal complaint, the State of California has charged Jack Van Sickle with conspiracy to commit murder, a capital offense. A warrant for his arrest was issued. Van Sickle was apprehended in Nevada and committed to jail. In due course, the Governor of Nevada issued an executive warrant directing the Nevada authorities to deliver Van Sickle to California agents for conveyance to that state to stand trial upon the

charge. In accordance with the command of the Uniform Criminal Extradition Act, Van Sickle was taken before the court and informed of his rights, especially of his right to challenge the legality of his arrest by habeas.[1] He did so and, in addition, petitioned for admission to bail. His petition for bail was granted and bail fixed in the sum of $10,000. Bail was furnished and Van Sickle released from confinement pending disposition of his challenge to the validity of his arrest. This certiorari proceeding was then commenced by the State since the remedy of appeal in these circumstances is not granted. Ex parte Wheeler, 81 Nev. 495, 500, 406 P.2d 713 (1965).

1. The State's challenge to the power of the district court to grant bail rests mainly upon NRS 179.207 and NRS 179.209[2] of the Uniform Criminal Extradition Act which allows bail before issuance of the executive warrant (unless the offense is one punishable by death or life imprisonment in the demanding state), but is silent as to the right to bail

---

[1]NRS 179.197: "1. No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him has appointed to receive him unless he is first taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel.

"2. If the prisoner or his counsel state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.

"3. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody and to the agent of the demanding state."

[2]NRS 179.207: "If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged and, except in cases arising under NRS 179.189, that he has fled from justice, the judge or magistrate must, by a warrant reciting the accusation, commit him to the county jail for such a time, not exceeding 30 days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused gives bail as provided in NRS 179.209, or until he is legally discharged."

NRS 179.209: "Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, a judge or magistrate in this state may admit the person arrested to bail by bond, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond, and for his surrender, to be arrested upon the warrant of the governor of this state."

after the governor's warrant has been issued. This legislative silence is interpreted by the State to mean that bail is precluded in all extradition matters after issuance of the governor's warrant. This contention finds support in the case of Allen v. Wild, 86 N.W.2d 839, 841–42 (Iowa 1957), where the court observed that since the act contained no similar provision for bail after arrest upon the governor's warrant, it may be inferred that the omission of such provision was intentional. Moreover, the State contends that the mentioned statutes preclude bail in all cases where the offense charged by the demanding state is punishable by death or life imprisonment.

2. The underlying fallacy of the State's position is the assumption that a legislative grant of power is essential before a court in this State may grant bail in an extradition matter. Our Nev. Const. art. 1, § 7, provides that "all persons shall be bailable by sufficient sureties; unless for Capital Offenses when the proof is evident or the presumption great." That provision does not exclude persons in custody by reason of an extradition proceeding. Application of Haney, 289 P.2d 945 (Idaho 1955). It is not confined to persons in custody for crimes committed in Nevada. Neither does it preclude bail to one charged with a capital offense where the proof is not evident nor the presumption great. Ex parte Wheeler, 81 Nev. 495, 406 P.2d 713 (1965). The court's power to grant bail stems from that constitutional provision and may not be diminished by legislative action or an interpretation of legislative silence. There is nothing contained in the U.S. Constitution art. IV, § 2, concerning interstate extradition which touches the problem before us.

3. Several statutes have been enacted to accommodate our constitutional provision for bail. NRS 34.360 provides that every person restrained of his liberty under "any pretense whatever" may petition for habeas. The "pretense" in this case was the warrant of the Governor of the State of Nevada. The Uniform Extradition Act itself, NRS 179.197, contemplates habeas to test the legality of his arrest. NRS 34.530 expressly makes habeas available for the purpose of giving bail to one in custody on "any" criminal charge. These provisions of our statutes accommodate the constitutional command.

Acceptance of the State's position that the court lacks power to grant bail after the executive warrant has issued would deny meaning to these code provisions. Moreover, such position places a penalty upon the fugitive's right to challenge the legality of his arrest and might effectively force a waiver of that right since the price of exercising it—jail, until his challenge is resolved by the court—may be too great.

4. The offense with which Van Sickle is charged by the State of California is a capital offense under the law of that state. The California Constitution with respect to bail, art. 1, § 6, is identical to our art. 1, § 7. In California, as here, an accused in a capital case may not be admitted to bail when the proof is evident or the presumption great. Conversely, he is entitled to release on bail where the proof is not evident nor the presumption thereof great. People v. Tinder, 19 Cal. 539 (1862). To this extent California law is the same as ours. Ex parte Wheeler, 81 Nev. 495, 406 P.2d 713 (1965). The determination of whether the proof is evident is discretionary [NRS 178.484(2); Ex parte Wheeler, supra, at 500] and not reviewable by certiorari [Marshall v. District Court, 79 Nev. 280, 382 P.2d 214 (1963)] since that writ concerns only jurisdiction. I would dismiss this proceeding.