Donald George EMIG, Plaintiff
and Appellant,

v.

N.D. Pete HAYWARD, Sheriff of Salt
Lake County, State of Utah,
Defendant and Respondent.

No. 18823.

Supreme Court of Utah.

June 19, 1985.

As Amended July 15, 1985.

Connie L. Mower, Earl G. Xaiz, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for defendant and respondent.

ZIMMERMAN, Justice:

Appellant Donald George Emig is sought by the State of Colorado for crimes he allegedly committed in that state. After his arrest in Utah as a fugitive from justice, Emig was incarcerated. In due course, an extradition warrant was issued by the Governor of Utah. Emig challenged his incarceration and the extradition proceedings by successive petitions for a writ of habeas corpus. His petitions were denied, and his surrender to Colorado was ordered. On appeal, Emig argues that he has been denied both his right to challenge his incarceration by writ of habeas corpus and his right to appeal the judgment of the district court. We reject both of these contentions, affirm the lower court's denial of Emig's petition, and authorize his immediate extradition to Colorado.

Emig was arrested in Utah on July 16, 1982, as a fugitive from justice, pursuant to U.C.A., 1953, § 77–30–13 (1982 ed.). He had allegedly committed crimes in Colorado some ten days earlier. Acting pro se, Emig filed a petition for a writ of habeas corpus on July 27th. At an August 16th hearing on the matter in the Third District Court, Judge Rigtrup found that the extradition documents had not yet arrived from Colora-

do and that the governor's extradition warrant had not issued. Therefore, he found the petition premature and dismissed it without prejudice. Because of the delay in the issuance of the governor's warrant, Judge Rigtrup, acting under section 77–30–17 of the Code, also ordered Emig held for up to sixty days beyond the initial thirty-day period authorized by the extradition statute in order to give the Colorado authorities time to forward the necessary papers to Utah.

Emig filed a second petition for a writ of habeas corpus, which was heard by Judge Baldwin on September 7th. At this hearing, Emig was represented by counsel. Because the second petition was identical to the first and the governor's warrant still had not issued, Judge Baldwin considered himself bound by the previous order entered by Judge Rigtrup and declined to proceed further.

The governor's warrant issued on September 27, 1982. Emig then filed an amended petition for a writ of habeas corpus. This matter was initially scheduled for hearing before Judge Rigtrup on November 11th, but was shifted to Judge Frederick and heard on November 5th. The hearing, at which Emig was represented by counsel, resulted in a denial of the habeas corpus petition, a denial of what the minute entry reports as "plaintiff's motion for continuance," and a grant of Emig's motion to stay the extradition proceedings pending appeal to this Court.

In early November of 1982, Emig filed his notice of appeal, and the next month his counsel filed with the clerk a designation of record and certificate indicating that a transcript had been ordered. Also in December, Emig's counsel filed a motion to set bail. Bail was denied as being unavailable under Utah's Uniform Criminal Extradition Act once the governor's warrant had issued. Neither Emig nor his counsel took any further action, other than seeking six extensions of time within which to file an opening brief on appeal, until this Court noticed the matter up for dismissal on March 9, 1984, for failure to prosecute the

appeal.[1] At this point, Emig's counsel contacted the court reporter for the first time. She informed Emig's counsel that she was unable to locate the notes of the November 5, 1982, habeas hearing. Counsel, unaware of any problem with the transcript until that time, had simply postponed any work on the brief while awaiting the transcript.

Pursuant to Utah Rule of Civil Procedure 75(m), Emig's counsel undertook to have a settled statement prepared for use on appeal in lieu of the transcript. A statement of the facts according to Emig's recollection was prepared. This was filed with the district court, and respondent lodged objections and amendments. On May 7, 1984, Judge Frederick held a hearing to settle the record. The court heard testimony from only one witness, Richard Shepherd, a Deputy Salt Lake County Attorney who had been present at the November 5, 1982, proceeding. Ken Brown, a practicing attorney in Salt Lake City who served as Emig's counsel at the November 5th proceeding, was not called nor was a continuance sought so that he could be brought before the court. In addition to hearing from the prosecutor, the judge reviewed both his own notes and the docket entries and heard the arguments of counsel. Judge Frederick then approved a settled statement for use in this appeal.

Emig claims on appeal that he has been denied his right to habeas corpus and that the extradition statute denies him due process. With respect to the claim that he was denied habeas, Emig argues that at all three of his habeas hearings he should have been allowed to put on evidence that he was not a fugitive from justice and, therefore, that he should not have been held in custody. He asserts that at all three hearings the district court denied him this right and, in so doing, effectively denied him his constitutional right to habeas corpus. He further claims that if the Uniform Criminal Extradition Act sanctions the procedure followed in the district court, then it effectively precludes him from challenging his incarceration and denies him due process.

■■■ There are very few grounds upon which one held awaiting extradition can challenge the extradition in the holding state. However, under the Utah Uniform Criminal Extradition Act and our case law, an accused has the right to challenge his extradition by showing that he is not a fugitive from justice. *See* U.C.A., 1953, §§ 77-30-1 to -28 (1982 ed.); *Scott v. Beckstead*, 13 Utah 2d 428, 431, 375 P.2d 767, 769 (1962); *Langley v. Hayward*, Utah, 656 P.2d 1020, 1022 (1982). For example, if the person sought to be extradited was not in the demanding state on the date of the crime, or if he is not the person named in the extradition warrant, he cannot be a "fugitive from justice" within the meaning of the extradition statute. Emig claims that he was not in Colorado on the date of the crime and that the defects in the extradition proceedings denied him the opportunity to establish that fact. To determine whether his contentions have merit, we must evaluate them in relation to each stage of the extradition process.

We first consider the two hearings held before the governor's warrant issued. With respect to these hearings, the issue is whether Emig should have been permitted to put on evidence that he was not a fugitive from justice and whether the refusal to take such evidence was a denial of due process. At the first hearing on August 16th, Emig made the following proffer: "I have witnesses here. I can call witnesses from your own people, up here at the family truck campers group to prove every day they seen me here [in Utah] when I was supposed to be over there [in Colorado]. I'm ready to go." The court refused Emig's proffer and dismissed the habeas petition without prejudice because, in the

---

**1.** It should be noted that at oral argument Emig's counsel stated that Emig was detained in connection with this matter from the date of his arrest in July of 1982 until December of that year, and again from February of 1984 until the present. The interim period of incarceration, according to counsel, was attributable to separate charges brought against Emig in Davis County, Utah.

absence of the governor's warrant, there were no facts alleged which his evidence could challenge; therefore, the petition and, impliedly, any testimony related to it were premature. At the second hearing, the posture of the case had not changed, and no evidence was taken.

■ Although the refusal of the district court to take evidence on the fugitivity issue was improper, we find no due process violation under either the state or federal constitutions. Emig was arraigned on July 20, 1982. In the absence of any contention to the contrary, we must presume that the hearing before the circuit court judge who arraigned Emig as a fugitive was properly conducted and that the judge made the threshold determination mandated by section 77–30–15—that Emig appeared to be the person charged with having committed the crime alleged and that he had fled from justice. U.C.A., 1953, § 77–30–15 (1982 ed.). Once this determination was made and Emig was committed to the county jail, he challenged what he perceived to be his illegal incarceration by filing a writ of habeas corpus asserting that he was not in Colorado at the time the crimes were committed and, therefore, could not be a fugitive from justice. His challenge was properly taken under Utah law. U.C.A., 1953, § 77–30–10 (1982 ed.); Utah R.Civ.P. 65B(f).[2] Accordingly, he should have been permitted to present evidence going to his whereabouts on the dates at issue.

■ The district court, we think, confused the issue of Emig's status as a fugitive with the issue of his participation in the underlying crimes committed in Colorado. The former requires no factual specification from the demanding state and is an entirely appropriate inquiry within the asylum state. In fact, it is precisely the determination that must be made by the arraigning court. In contrast, the inquiry into participation in the underlying crimes goes

to the merits of the charge in the demanding state and is beyond the ambit of the asylum state's interest in the matter. *See Michigan v. Doran*, 439 U.S. 282, 289–90, 99 S.Ct. 530, 535–36, 58 L.Ed.2d 521 (1978); *Commonwealth ex rel. Marshall v. Gedney*, 456 Pa. 570, 572, 321 A.2d 641, 642 (1974); *Narel v. Liburdi*, 185 Conn. 562, 565, 441 A.2d 177, 179–80 (1981).

■ The district court, then, erred in refusing to hear Emig's fugitivity evidence and in dismissing his petition. Rather than appealing the dismissal of his first habeas petition to this Court, however, Emig chose to file a second habeas petition, which also was erroneously denied. Had Emig appealed the denial of the first habeas petition, this court could have proceeded expeditiously to hear his claim that he was denied opportunity to challenge his fugitive status. *Cf. Chynoweth v. Larson*, Utah, 572 P.2d 1081 (1977). Emig was accorded due process; he simply failed to follow the regular channels of appeal available to anyone who believes an erroneous decision has been rendered against him.

■ Further, once the governor's warrant issued on September 7, 1982, Emig was no longer in a position to complain about defects that might have occurred during the prewarrant period of incarceration. The governor's warrant, carrying with it a presumption of validity, *Michigan v. Doran*, 439 U.S. at 290, 99 S.Ct. at 536, effectively mooted any issues relating to the fugitivity complaint under which Emig was originally detained. *See, e.g., Levick v. Smedley*, Alaska, 553 P.2d 482, 484 (1976). In essence, when the governor's warrant issued it provided an entirely new basis upon which to hold Emig. In order to challenge his incarceration at this point, Emig had to file another habeas petition challenging the governor's warrant. This he did. To prevail at the hearing on this petition, Emig had to carry the burden of refuting the prima facie case of fugitivity

---

**2.** We have often noted that a writ of habeas corpus is not a proper substitute for an appeal. *E.g., Bryant v. Turner,* 19 Utah 2d 284, 286, 431 P.2d 121, 122 (1967). However, that rule has no

application here because the extradition statute specifically provides that habeas is the proper means for challenging prewarrant confinement. U.C.A., 1953, § 77–30–10 (1982 ed.).

that had been established through issuance of the Utah governor's warrant. *See, e.g., McCoy v. Cronin,* 187 Colo. 364, 531 P.2d 379, 380–81 (1975).

The next question, therefore, is whether Emig's due process rights were denied at the third hearing, held after the governor's warrant issued. Emig apparently claims that at this hearing he was not permitted to pursue his fugitivity challenge effectively. The factual basis for this claim is the assertion that his witnesses, who would have testified that he was not in Colorado at the time the crimes were committed, were not available at the third hearing. He attributes the absence of his witnesses to several errors of the district court. Upon examination, we find no substance to any of his claims.

■ Emig first asserts that he received inadequate notice of the November 5th hearing held before Judge Frederick on the amended habeas petition. This inadequacy, he contends, prevented him from having his witnesses available at the appropriate time and place to testify on his behalf. This claim has no merit. The record indicates that Emig had ample notice of the November 5th hearing. In a letter to the county clerk, dated October 27, 1982, Emig stated, "On the 5th of November I have a Habeas Corpus hearing...." In another letter to the clerk, dated November 2, 1982, he again stated, "I go to court Friday on a Habeas Corpus hearing...." Emig had at least a week's advance notice of the hearing, presumptively enough time to arrange for his witnesses to appear. Also noteworthy is the fact that there is no indication in the record that either Emig or his attorney, both of whom were in attendance, objected to going forward with the November 5th hearing on the basis of inadequate notice.

■ Emig's second assertion regarding the November 5th hearing is that the judge erred in denying him a short recess so that he could bring his witnesses into court. He asserts that this prevented him from producing witnesses whose testimony would exculpate him. The settled record does not support Emig's assertion that a recess was requested: it recites only that he requested and was denied a continuance. But passing over the distinction between a continuance and a recess, there is nothing in the record that supports Emig's claim that the court was informed that the purpose of the delay was to produce witnesses. Although Emig pressed this contention upon Judge Frederick during the proceedings held in 1984 to reconstruct the record, Judge Frederick's recollection, based on his own notes, was that no such motion had been made. Emig has advanced no evidence to challenge the settled statement, except his asserted recollection, already rejected by the judge below. And we note specifically that Emig did not have the attorney who represented him at the November 5th hearing testify at the reconstruction hearing. We find no basis for disturbing the recitations of the settled statement which constitute the record here.

■ Emig's third challenge to the adequacy of the November 5th hearing is that the loss of the reporter's notes and the inadequate procedures for settling the record pursuant to Rule 75(m), Utah R.Civ.P., effectively denied him his constitutional right to appeal the district court judgment. *See* Utah Const. art. VIII, § 9. This contention is also without merit. Any difficulty in reconstructing the November 5th record was due, in large part, to the nineteen-month delay between the habeas hearing and the record reconstruction hearing. It is not clear to us whether this delay was due to the reporter's failure to inform Emig's counsel that the notes had been lost or the failure of Emig and his counsel to inquire after the transcript.

From the time that the notice of appeal was filed until this Court noticed a hearing on whether the appeal should be dismissed for lack of prosecution, Emig's counsel requested six extensions of time in which to file the brief. Neither Emig nor his counsel seemed concerned about the delay that left Emig in jail during this period. But for this Court's prodding, the loss of the notes might have remained undiscovered, and the appeal might have lain dormant for

many more months. Had Emig or his counsel acted vigilantly, the loss could have been discovered earlier and the reconstruction hearing held much closer in time to the initial hearing, thus reducing the likelihood of memory loss. Under these circumstances, Emig and his counsel must take responsibility for any difficulties arising from reconstruction of the record more than a year and a half after it was originally made.

In addition, Emig has made no showing that the reconstruction procedure was defective or that the settled statement would have been any different had the hearing been held earlier. The only claim that remotely reflects on the adequacy of the reconstruction procedure and the long delay in getting it underway is the assertion that Emig was prejudiced because Mr. Brown, the lawyer who represented him at the November 5th habeas hearing, no longer represented him by the time the record was reconstructed. Certainly, Mr. Brown's recollection of the interchange regarding the alleged motion for a recess to permit time to bring in witnesses would have been helpful. However, according to the record, neither Emig nor his current counsel made any effort to secure Mr. Brown's presence at the reconstruction hearing, nor did they seek to continue the hearing so that they could arrange for his attendance. Thus, the responsibility for any failure of the settled statement to reflect what happened at the November 5th hearing because Mr. Brown's testimony was not before the court rests with Emig.

The final issue presented by this appeal is the obvious one: whether a person sought for extradition may be incarcerated for almost two years [3] without bail pending appellate review of a denial of his habeas petition without violating his constitutional or statutory rights. Under the circumstances of this case, we find no such violations.

At first blush, this seems an odd result. However, extradition is not a typical criminal proceeding. To explain, Emig's incarceration must be considered in two stages—the period before the issuance of the governor's warrant and the period after. Before the warrant issued, Emig was entitled to seek bail. The Uniform Criminal Extradition Act permits the asylum state to incarcerate one arrested as a fugitive from justice in the county jail for thirty days in order to allow a reasonable time for the demanding state to forward its extradition documents and for the asylum state's governor to issue an extradition warrant based on those documents. U.C.A., 1953, § 77–30–15 (1982 ed.). The statute also authorizes a court to order the extension of this period of incarceration by an additional sixty days upon a proper showing. U.C.A., 1953, § 77–30–17 (1982 ed.). However, under both section 77–30–15 and section 77–30–17, and well-settled law, the fugitive may be admitted to bail during this period preceding the issuance of the governor's warrant.[4] *State v. Second Judicial District Court*, 86 Nev. 531, 534, 471 P.2d 224, 225 (1970), *cert. denied*, *Van Sickle v. Nevada*, 401 U.S. 910, 91 S.Ct. 874, 27 L.Ed.2d 809, *reh'g denied*, 402 U.S. 925, 91 S.Ct. 1365, 28 L.Ed.2d 664 (1971); *Deas v. Weinshienk*, 188 Colo. 17, 18–19, 533 P.2d 496, 497 (1975); *State ex rel. Schiff v. Brennan*, 99 N.M. 641, 642, 662 P.2d 642, 643 (1983); *In re Lucas*, 136 N.J.Super. 24, 31, 343 A.2d 845, 848 (1975), *aff'd*, 136 N.J.Super. 460, 346 A.2d 624

---

**3.** Although it has been almost three years since Emig was first arrested and over two and a half years since the final denial of his petition for habeas, for approximately one year he was serving time on separate charges brought in Davis County. That period of incarceration is not chargeable to any delay in the appellate process.

**4.** Section 77–30–16 provides:

Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed a judge or magistrate in this state may admit the person arrested to bail by bond, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond, and for his surrender, to be arrested upon the warrant of the governor of this state.

(1975), *cert. denied,* 69 N.J. 378, 354 A.2d 306 (1975); *Annot.,* 56 A.L.R.2d 668, 675; A.L.R. Later Case Service, 56–61 (1976). In this case, a hearing was held on Emig's bail request prior to the issuance of the governor's warrant and bail was set; however, he was unable to make the bail. That bail proceeding was entirely proper, and we can find no unconstitutional denial of Emig's liberty interest during the period preceding the warrant's issuance.

▮ Different rules apply to the period following the issuance of the governor's warrant. Under the Uniform Criminal Extradition Act, the interest of the asylum state—Utah—in detaining the fugitive and holding him ready for delivery to the demanding state increases markedly once the governor's warrant issues; from this point on there is no provision for release on bail. *State v. Second Judicial District Court,* 86 Nev. at 534, 471 P.2d at 225; *Deas v. Weinshienk,* 188 Colo. at 19, 533 P.2d at 497; *State v. Truman,* 115 Ariz. 145, 146, 564 P.2d 96, 97 (App.1977); *State ex rel. Schiff v. Brennan,* 99 N.M. at 642–642, 662 P.2d at 643; *In re Lucas,* 136 N.J.Super. at 31–32, 343 A.2d at 848–50; *Annot.,* 56 A.L.R.2d 668, 675; A.L.R. Later Case Service, 56–61 (1976). This widely accepted rule is rationally rooted in the practicalities of the extradition process:

> One of the reasons supporting the rule against granting bail in extradition cases where the fugitive has been reduced to custody by the execution of a governor's rendition warrant, is because the offense is not one cognizable in the courts of the asylum state, whereas the demanding state has all of the facilities to determine the gravity of the offense, the amount of bail, if any, and the conditions thereof. Here there is no restraint on the respondent's leaving the jurisdiction. The integrity of the processes of the courts of [the asylum state] as well as the solemnity and dignity that we should accord the request of a demanding sister state, places in jeopardy the ability of this state to produce the prisoner for delivery to the demanding state when that time arrives.

*Buchanan v. State ex rel. Weiss,* Fla.App., 166 So.2d 596, 597 (1964). *See also State ex rel. Stringer v. Quigg,* 91 Fla. 197, 204–05, 107 So. 409, 411 (1926).

▮ We find these policy considerations, which have been almost universally accepted by other courts considering the issue, persuasive. Emig asked that bail be set immediately after the November 5th hearing. The motion was properly denied. The Utah courts do not know the details of the charges pending against him and are not in a position to assess what amount would be appropriate for bail. Utah's role is limited to detaining the fugitive for a reasonable time until the Colorado authorities seek his return to face the pending criminal charges. Such an approach does not deny Emig any of his constitutional rights.

▮ If Emig was intent on being released on bail, either before or after he served his time on the Davis County charges, he should have allowed himself to be extradited to Colorado and there sought bail. Extradition laws are premised on the assumption that the demanding state will accord the fugitive all of his legal rights, including his right to bail. *Meechaicum v. Fountain,* 696 F.2d 790, 792 (10th Cir. 1983), *quoting Deas v. Weinshienk,* 533 P.2d at 497. We have no reason to suppose that Colorado would improperly deny any request by Emig that bail be set. Under our statute, however, at this stage of the proceedings, Emig cannot be admitted to bail in Utah. *Ludahl v. Larson,* Utah, 586 P.2d 439, 441 (1978); *cf. West v. Janing,* 449 F.Supp. 548, 551 (D.Neb.1978). For whatever reason, Emig chose to remain imprisoned here rather than to acquiesce in extradition and seek bail in Colorado. He was even willing to let his appeal languish before this Court for an extraordinary period, which only increased the period of his incarceration. These choices were his. Under the circumstances, we cannot find any denial of due process in the deprivation of liberty they occasioned.

Finally, we reach the merits of Emig's habeas petition. He received his requested habeas review on November 5th, after the governor's warrant specifying the dates and times of the alleged Colorado offenses had issued. To meet his burden on the fugitivity issue, Emig had to prove by clear and convincing evidence that he was not a fugitive from justice. *Langley v. Hayward*, Utah, 656 P.2d at 1022. Emig was not able to produce witnesses to testify on the issue of his fugitive status and he put on no other evidence. Thus, nothing rebutting his fugitive status was before the court. Under the circumstances, Emig simply did not make out his case, and we must defer to the judgment of the trial court.

Affirmed.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.