526 P.2d 784

**STATE of Arizona, Petitioner,**

v.

**Hon. Joe JACOBSON, Judge of the Superior Court, Pima County, Arizona, Respondent;**

**Alvin TYGER, Real Party in Interest.**

**No. 2 CA–CIV 1734.**

Court of Appeals of Arizona, Division 2.

Sept. 26, 1974.

Rehearing Denied Oct. 22, 1974.

Review Denied Dec. 3, 1974.

N. Warner Lee, Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for petitioner.

Aboud & Aboud by John Aboud, Sr., Tucson, for real party in interest.

Before HATHAWAY, C. J., and KRUCKER and HOWARD, JJ.

## OPINION

PER CURIAM.

Petitioner challenges an order of the respondent court releasing the real party in interest from custody. Since we are of the opinion that the respondent court acted arbitrarily and without jurisdiction, and there being no remedy by appeal, we assume jurisdiction to grant the relief requested by the State of Arizona.

The events which transpired prior to the subject ruling are not in dispute. Mr. Tyger, real party in interest herein, was convicted in Arkansas of burglary and grand larceny, sentenced to a term of ten years in 1967 and committed to the Arkansas Department of Corrections. Shortly thereaf-

ter, he attempted to escape, was apprehended and sentenced to an additional three years to run concurrent with the ten years sentence. On July 14, 1968, he escaped again and remained at large until apprehended in Tucson, Arizona, in May, 1974. A requisition for extradition by the Governor of Arkansas was duly made, and on August 28, 1974, the Governor of Arizona conducted a hearing pursuant to A.R.S. § 13–1304. On August 30, 1974, Governor Jack Williams issued a warrant of extradition directing the Sheriff of Pima County to deliver Mr. Tyger to the authorized agent of the State of Arkansas, pursuant to A.R.S. § 13–1308.

On September 5, 1974, Tyger's attorney and the state attorney, appeared before the respondent court, apparently for the purpose of procuring time for the filing of a writ of habeas corpus pursuant to A.R.S. § 13–1310, which provides in pertinent part:

" . . . and if the prisoner, his friends or counsel shall state that he or they desire to test the legality of his arrest, the prisoner shall be taken forthwith before a judge of a court of record, who shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus."

At the commencement of the hearing, the following colloquy occurred:

"Mr. Dingledine: Your Honor, the County Attorney has just been brought in, so it seems it is a mandatory time and the only purpose we are here for is to set a reasonable time and get an avowal from Mr. Aboud, if he is going to file a writ of habeas corpus. That is the only issue before the Court.

The Court: The Court could create a problem in that regard. Presuming Mr. Aboud requests the Court to release the Defendant on his own recognizance and if the Court should do that, then a writ of habeas corpus would be a futile gesture. The purpose of the habeas corpus is with respect to the detention of the Defendant.

All right, Mr. Aboud, what do you wish to say to the Court?

Mr. Aboud: If your Honor please, I request an opportunity to file the write [sic] of habeas corpus as permitted by statute. I ask that the Defendant be released upon his ROR.

The Court: There is no necessity of a writ of habeas corpus if the Court releases him on his own recognizance, Mr. Aboud. The only purpose of a writ of habeas corpus is to determine whether or not the Defendant is unlawfully detained, you see. So, we will make a ruling in that regard. We will make a ruling. Is that your intention, you want a writ of habeas corpus?

Mr. Aboud: If your Honor, please, we want to contest the legality of the detention of the Defendant.

The Court: Well, in the law, where there is a wrong, there is a remedy and if the Court decides to release this Defendant on his own recognizance, a writ of habeas corpus will not be required."

The court went on to indicate that the Governor of Arizona had issued a Governor's warrant, although he had not seen it, and that Mr. Tyger was in the Sheriff's custody. Before ordering Mr. Tyger's release on his own recognizance, the respondent judge explained:

"You see, the Governor has ruled on this matter and pursuant to the Uniform Criminal Extradition Act, which has been adopted by both Arizona and Arkansas, ostensibly, as far as I know, the Governor has issued a Governor's warrant. I haven't seen the Governor's warrant. I understand the Defendant is in custody and went to the Sheriff's Office on his own accord and volition this morning and turned himself in.

Now, I have thought about this matter for the last hour and I have always felt that the purpose of the Court is to be a minister of justice. I have said repeatedly from this Bench that I have had a deep respect for the law and a vital concern for justice and I'm vitally concerned about the welfare of this young man.

I recall very vividly that when I saw the Supreme Court Building, etched in stone about the Supreme Court is the basic premise that we have equal justice under the law. This young man, based on my cursory knowledge and information about him, has rehabilitated himself. He now has a job and his employer says he is a trusted employee. He has been diligent in the performance of his duties. He is married, he has a child, and he has rehabilitated himself.

The purpose of the criminal law is not only to punish, but to rehabilitate. I frankly can't see that his return to Arkansas would aid, from the standpoint of rehabilitation. On the other hand, the Governor of this State, if he signed the extradition warrant, under the Uniform Criminal Extradition Act, is empowered to do so. He has that privilege. He also has the privilege, which is a legal freedom, to deny extradition, considering the gravity of this case and considering the basic element of compassion that I feel the Court should have, as well as the Executive Department should have. We should have compassion.

I am going to make the following order: I am going to order the Defendant released on his own recognizance and have him released to Mr. Aboud; require that he keep his counsel posted of his place of employment and change of address, and I'm sure that based on the hundreds of people that have signed the petitions and numerous telephone calls that I received last night and even this morning, that the Defendant will not absent himself from the jurisdiction.

He has proven that he has the capability of working. He has also proven that he is worthy of trust by virtue of the confidence that has been placed in him with respect to his employer.

Now, there are some good things in Arkansas. I was in Arkansas twenty years ago and I went to a bath house and as I

remember on the bath house doors was a statement that went like this. It said, "My get up and gone is got up and went, but I think with a joy with respect to all of the money that I have spent, even though my back is now bent."

I also saw another statement, a little poem that I have recited to many kids that get married and the title on this bath house in Hot Springs, Arkansas and the title of the poem was "Begin It." Lose this day loitering, Twill be the same story. Tomorrow and the Next More Dilatory, all indecision brings its own Delays and Days are Lost Lamenting over Days.

'Are you in Earnest? Seize this very Minute. Only engage and the Mind grows Heated, Begin it and the Work will be completed. What you can do or Dream you can, Begin it. Courage has genious, power and Magic in It.'

This young man has shown courage and he has begun to work. He has rehabilitated himself and in my considered judgment, I see no earthly reason why he should be returned to the State of Arkansas. So, I'm going to order that he be released on his own recognizance, under the supervision of his attorney, John Aboud, Senior, and that he keep Mr. Aboud notified as to his place of residence and employment at all times and that he continue his work.

I'm going to further order that we have another hearing in this matter. I'm going to have a stay with respect to extradition. I'm not going to order his extradition, despite the fact that there is a Governor's warrant. You know, I'm not so sure the Governor is right and furthermore, I'm not so sure that maybe we shouldn't have a judicial review by the Court of Appeals in this regard.

We are going to give you an opportunity, Mr. Aboud, within a sixty-day period —we are going to set another hearing in this matter on November 1st and I will request you be in Division XI at 9:00 a. m. on November 1st and we will have another hearing. During that interval, you will have an opportunity to try, based on the basic premise that where there is a wrong there is a remedy, to file whatever special action you wish in the Court of Appeals. But, the writ of habeas corpus will not be necessary by virtue of the fact that I have released him on his own recognizance to you.

As long as we are on the subject, I would like to commend the Arizona Daily Star for its excellent editorial. I would like to commend the hundreds and thousands of people that have signed the petition, that have shown they have compassion in their hearts for this young man, who has proven that he has rehabilitated himself. I would like to also commend Mr. Aboud for his diligence in behalf of this Defendant.

Again, I would like to point out to you that we have a principle in the law known as comity. And comity is where one state recognizes the laws of another state and proceeds accordingly. In other words, if we had a prisoner in Arkansas that had escaped from this State, the Arkansas Governor would be privileged at that time to grant extradition or to deny extradition. And Governor Williams, in his judgment, saw fit not to deny extradition. Now, that is a matter of opinion. But, I believe, as I have said earlier, that where there is a wrong, there is a remedy. And, Mr. Aboud, I will leave it to you, between now and November 1st, to exercise your legal expertise and determine what can be done in behalf of this Defendant.

I will order the Clerk to prepare a release and order the Defendant released to Mr. Aboud. And if the Defendant has any personal effects at the jail, then, Mr. Aboud, you can take him down to the jail to get his personal effects.

And I would also like to commend the City Council and the Mayor of this City for their resolution and I hope, and I

say this genuinely, I hope that this young man can remain in Tucson and work and provide for his family.

I'm sure that Governor and Senator-Elect Bumpers should be made to realize that the people of Arizona have genuine compassion for a man that has rehabilitated himself and I hope in his infinite wisdom, before he goes to the United States Senate, that he exercises that degree of compassion."

■ The respondent judge expressed his opinion that Mr. Tyger had rehabilitated himself and therefore he saw "no earthly reason why he should be returned to the State of Arkasas." The court further ordered that another hearing would be held within 60 days (November 1, 1974) and stated that he would stay the extradition "despite the fact that there is a Governor's warrant." [1]

■ We agree with the state that the respondent judge had absolutely no authority to order Mr. Tyger's release on bail or on his own recognizance at this stage of the extradition proceedings. The Arizona counterpart of the Uniform Criminal Extradition Act, A.R.S. § 13–1301 et seq., provides for bail only prior to the issuance of the warrant of the Governor in the asylum state. A.R.S. §§ 13–1315 to 13–1317. Judicial precedent is unanimous in holding that where there is no statute providing for bail after the warrant for arrest is issued by the Governor of the asylum state, there is no right to bail. Waller v. Jordan, 58 Ariz. 169, 118 P.2d 450 (1941). Accord, Walden v. Mosley, 312 F.Supp. 855 (D. Miss.1970); Buchanan v. State, 166 So.2d 596 (Fla.App.1964); Allen v. Wild, 249 Iowa 255, 86 N.W.2d 839 (1957); State v. Second Judicial District Court, 86 Nev. 531, 471 P.2d 224 (1970), cert. den., 401

U.S. 910, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); Annot. 56 A.L.R.2d 668, § 5 (1957); 31 Am.Jur.2d Extradition, § 27 (1967); 35 C.J.S. Extradition § 19 (1960). Furthermore, notwithstanding the fact that the courts have certain inherent powers, there is no inherent power to grant bail after issuance of the Governor's warrant. In re Amundson, 74 N.D. 83, 19 N.W.2d 918 (1945). The reason for the rule against the granting of bail has been well expressed in Buchanan v. State, supra:

" . . . One of the reasons supporting the rule against granting bail in extradition cases where the fugitive has been reduced to custody by the execution of a governor's rendition warrant, is because the offense is not one cognizable in the courts of the asylum state, whereas the demanding state has all of the facilities to determine the gravity of the offense, the amount of bail, if any, and the conditions thereof. Here there is no restraint on the respondent's leaving the jurisdiction. The integrity of the processes of the courts of Florida as well as the solemnity and dignity that we should accord the request of a demanding sister state, places in jeopardy the ability of this state to produce the prisoner for delivery to the demanding state when that time arrives." 166 So.2d at 597.

■■ While it is axiomatic that a trial judge has authority to interpret the law reasonably, it must be in conformity with the statutes of the State of Arizona and the decisions of the Arizona appellate courts. He may not alter the law or fashion it to his own liking. This is the function of the legislative branch of the government. The trial judge is accountable to no man for his courtroom decisions, but he *is* accountable to the law. The trial judge's action in this case cannot be sup-

---

1. Judicial review of the action of the Governor in signing the warrant is limited to determining (1) that the complaint issued out of the demanding state was made on an affidavit; (2) that it substantially charges an offense; and (3) that it is made to appear the accused is a fugitive from justice. Application of Oppenheimer, 95 Ariz. 292, 389 P.2d 696 (1964), cert. den., 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311 (1964).

ported by any reasonable interpretation of the law.

██ We find it appropriate to observe that trial judges are not at liberty to revise while professing to construe. The 21st Canon of Judicial Ethics, American Bar Association, provides, inter alia:

"Justice should not be moulded by the individual idiosyncrasies of those who would administer it."

██ This is a case of wide public interest. There has been a wave of public support for Alvin Tyger. But, if one thing is certain, it is that judges should not base their opinions on what may be the most popular decision or on the basis of phone calls and in so doing, forsake their duty to follow the law.

██ As to the equitable principle of where there is a right there is a remedy, it is also the rule that where there is a specific statute on the subject, equity follows the law. Sult v. O'Brien, 15 Ariz.App. 384, 488 P.2d 1021 (1971).

██ The only remedy available to Mr. Tyger to challenge the legality of his detention pursuant to the Governor's warrant, is that provided for in A.R.S. § 13–1310, i. e., to petition for a writ of habeas corpus.

For the foregoing reasons, the order of release is hereby vacated.