IN THE MATTER OF FRANK A. BASTO.

IN THE MATTER OF MARTIN L. CARBONE.

IN THE MATTER OF CARL J. PALO, JR.

Superior Court of New Jersey
Appellate Division

Argued October 29, 1985—Decided November 8, 1985.

Before PRESSLER, DREIER and BILDER, JJ.

*Peter V. Ryan* argued the cause for appellant Frank A. Basto (*Ryan, Pedicini & Donnelly*, attorneys; *Peter V. Ryan*, on the brief).

*Louis C. Esposito* argued the cause for appellant Martin L. Carbone.

*Richard F.X. Regan* argued the cause for appellant Carl F. Palo (*Hayden and Perle*, attorneys; *Richard F.X. Regan*, on the brief).

*Ike R. Gavzy*, Assistant Prosecutor, argued the cause for respondent County of Bergen, State of New Jersey (*Larry J. McClure*, Bergen County Prosecutor, attorney; *Ike R. Gavzy*, on the brief).

*George L. Schneider*, Essex County Prosecutor, attorney for respondent County of Essex, State of New Jersey (*Elizabeth A. Duelly*, Assistant Prosecutor, of counsel and on the brief).

*Carol M. Henderson*, Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Irwin I. Kimmel-*

*man,* Attorney General of New Jersey, attorney; *Carol M. Henderson,* of counsel and on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

These consolidated appeals arise out of extradition proceedings pursuant to the Uniform Criminal Extradition Law, *N.J. S.A.* 2A:160-6, *et seq.,* against the three defendants, Frank A. Basto, Martin L. Carbone and Carl J. Palo, Jr., all New Jersey residents. Although each had been admitted to bail when arraigned on a fugitive warrant issued against them by the State of Florida, bail was revoked upon the subsequent issuance of arrest warrants by the Governor of the State of New Jersey. The sole reason for revocation was the trial judges' understanding that the courts of the rendering state are without power to admit a defendant to bail once the Governor's arrest warrant is issued. That conclusion was based upon the holding of *In re Lucas,* 136 *N.J.Super.* 24 (Law Div.1975), aff'd o.b. 136 *N.J.Super.* 460 (App.Div.1975), certif. den. 69 *N.J.* 378 (1975). We are here asked to reconsider the *Lucas* holding, which has not been passed upon by the New Jersey Supreme Court. Having done so, we are constrained to disagree with *Lucas.* Accordingly, we reverse the orders revoking bail and remand to the trial courts for their consideration of the bail question consistent with this opinion.

There is no dispute among the parties as to the relevant facts. All three defendants were charged by the State of Florida with the crimes of conspiracy to commit murder and attempted murder. The same alleged criminal conduct constituted the gravamen of indictments returned against them in the United States District Court for the District of New Jersey and the United States District Court for the Southern District of Florida, each of which had set bail for each defendant in the amount of $200,000. During the pendency of the federal charges, the State of Florida issued fugitive warrants against

each of the defendants based on the Florida charges. Basto and Carbone surrendered to the Essex County Prosecutor's Office, were arraigned by the Superior Court in Essex County, and were each released on bail in the amount of $275,000. Palo surrendered to the Bergen County Prosecutor's Office, was arraigned by the Superior Court in Bergen County, and was released on bail in the amount of $250,000. Upon issuance of the Governor's arrest warrant pursuant to *N.J.S.A.* 2A:160–15, each appeared again before the court which had initially arraigned him, each stated his intention to pursue the habeas corpus relief afforded him by *N.J.S.A.* 2A:160–18, and each requested continuation of bail. The application for the continuation of bail pending the habeas corpus hearing was denied on the authority of *Lucas*. Each defendant then made an emergent application to this court for relief from the respective orders denying bail. We granted leave to appeal and have considered the matter on an expedited basis.

The question of the bailability of a defendant after the issuance of the governor's warrant and pending pursuit of his habeas corpus remedy has received considerable and diverse judicial attention throughout the country, and while the weight of authority still holds that bail is not allowable at that stage of the extradition proceeding, there has been of late, as described by one court, "an emerging minority view" to the contrary. *Meechaicum v. Fountain*, 537 *F.Supp.* 1098, 1100 (D.Kan. 1982), rev'd 696 *F.*2d 790 (10th Cir.1983). We are persuaded that the predicates of the majority view, as represented in New Jersey by *Lucas*, do not withstand either the force of the analysis of the minority view or overriding state constitutional and criminal law principles commonly adhered to in this jurisdiction. Accordingly, we reject the *Lucas* holding.

The majority and minority view concur as to basic extradition principles. Both recognize the extradition mandate of the Federal Constitution which requires that

[a] person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the

executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime. [*U.S.Const.*, Art. IV, § 2, par. 2]

Both recognize as well that each state is free to prescribe its own procedures for the performance of its extradition obligation provided only that these procedures are consistent with the constitutional mandate. And both recognize that all states have enacted the Uniform Criminal Extradition Law, 11 *U.L.A.* 51 (1974), some with minor variation, to govern internal extradition procedures. *See id.* at 51. And, finally, both agree that from the time of the initiation of the extradition proceeding until the issuance of the arrest warrant by the governor of the rendering state, the defendant may be admitted to bail. Indeed, the Uniform Law expressly so prescribes. *N.J.S.A.* 2A:160–24, following section 16 of the Uniform Law virtually verbatim, provides that:

Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, a judge or magistrate in this state may admit the person arrested to bail by bond or undertaking, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond or undertaking, and for his surrender, to be arrested upon the warrant of the governor of this state.

Since the statute explicitly conditions bail upon defendant's surrender to be arrested upon the warrant of the Governor, it has been uniformly construed as speaking only to the pre-rendition warrant stage of the extradition proceeding.

The point of departure between the majority and minority views is the consequence to be ascribed to the apparent silence of the Uniform Law with respect to post-rendition warrant bail. The majority view interprets that silence as an intended prohibition on the power of the court to grant bail after the governor's warrant is issued. It finds no inherent right to bail as a matter of state law. It also concludes that there is neither inherent power nor state constitutional or statutory authority for the court to admit to bail after issuance of the governor's warrant. And it is persuaded that the no-bail rule is consistent with the absolute obligation of each state to surrender fugitives upon

the appropriate demand of another state. *See In re Lucas, supra,* 136 *N.J.Super.* at 30–31. *And see, e.g.,* generally concurring in this view, *Balasco v. State,* 52 *Ala.App.* 99, 289 *So.* 2d 666 (Ct.Crim.App.1974); *State v. Jacobson,* 22 *Ariz.App.* 260, 526 *P.*2d 784 (Ct.App.1974); *Cadle v. Cauthron,* 584 *S.W.* 2d 6 (Ark.1979); *Johnson v. District Court,* 199 *Colo.* 458, 610 *P.*2d 1064 (1980); *Grano v. State,* 257 *A.*2d 768, 771 (Del.Super. Ct.1969); *Buchanan v. State ex rel. Weiss,* 166 *So.*2d 596 (Fla.Ct.App.1964); *State ex rel. Howard v. St. Joseph Superior Court,* 262 *Ind.* 367, 316 *N.E.*2d 356 (1974); *Allen v. Wild,* 249 *Iowa* 255, 86 *N.W.*2d 839 (1957); *State v. Second Judicial District Court, County of Washoe,* 86 *Nev.* 531, 471 *P.*2d 224 (1970), *cert.* den. 401 *U.S.* 910, 91 *S.Ct.* 874, 27 *L.Ed.*2d 809 (1971); *State ex rel. Schiff v. Brennan,* 99 *N.M.* 641, 662 *P.*2d 642 (1983); *In re Bayless,* 119 *Misc.*2d 82, 462 *N.Y.Supp.*2d 396 (Co.Ct.1983); *Emig v. Hayward,* 703 *P.*2d 1043 (Utah 1985); *In re Iverson,* 135 *Vt.* 255, 376 *A.*2d 23 (1977); *State v. Pritchett,* 12 *Wash.App.* 673, 530 *P.*2d 1348 (Ct.App.1975).

Many of the courts which have recently considered the issue have rejected the majority view, concluding that the prohibitory consequence ascribed by that view to the silence of the Uniform Law is unnecessarily restrictive and simplistic. These jurisdictions have all been persuaded either that that silence does not override the court's inherent power to grant bail to confined persons or that the right to bail is a statutory or constitutional corollary to the right to a writ of habeas corpus vouchsafed by the Uniform Law. *See, e.g., Carino v. Watson,* 171 *Conn.* 366, 370 *A.*2d 950 (1976); *Application of Haney,* 77 *Idaho* 166, 289 *P.*2d 945 (1955); *Petition of Upton,* 387 *Mass.* 359, 439 *N.E.*2d 1216 (1982); *Ruther v. Sweeney,* 137 *N.E.*2d 292 (Ct.App.Ohio 1956). One state has amended its version of the uniform law expressly to permit post-rendition warrant bail. *See Application of Carden,* 291 *Or.* 515, 635 *P.*2d 341 (1981), *cert.* den. 455 *U.S.* 921, 102 *S.Ct.* 1278, 71 *L.Ed.*2d 462 (1982). Two states, Nebraska and Texas, have reconsidered the issue after an initial no-bail holding and have opted to join the minority view.

*See State ex rel. Partin v. Jensen,* 203 *Neb.* 441, 279 *N.W.*2d
120 (1979); *Ex parte Quinn,* 549 *S.W.*2d 198 (Tex.Crim.App.
1977). And the Tenth Circuit has seriously questioned the
conclusion of the United States District Court for the District of
Kansas that Kansas would follow the majority view. *See
Meechaicum v. Fountain, supra,* 696 *F.*2d 790.[1]

We too conclude that *Lucas* has misconstrued the silence of
the Uniform Law. To begin with, we are satisfied that the
quoted bail provision of *N.J.S.A.* 2A:160–24 must be read in
*pari materia* with other sections of the law. We start our
analysis with *N.J.S.A.* 2A:160–15, which requires the Governor
to sign the arrest warrant if he decides that the demand of the
state seeking extradition should be complied with. *N.J.S.A.*
2A:160–18 prescribes the rights of the person arrested pursuant
to that warrant as follows:

> No person arrested upon such warrant shall be delivered over to the agent
> whom the executive authority demanding him shall have appointed to receive
> him, unless he shall first be taken forthwith before a judge of a criminal court
> of record in this state, who shall inform him of the demand made for his
> surrender and of the crime with which he is charged, and that he has the right
> to demand and procure legal counsel; and if the prisoner or his counsel shall
> state that he or they desire to test the legality of his arrest, the judge of such
> criminal court of record shall fix a reasonable time to be allowed him within
> which to apply for a writ of habeas corpus. When such writ is applied for,
> notice thereof, and of the time and place of hearing thereon, shall be given to
> the prosecuting officer of the county in which the arrest is made and in which
> the accused is in custody, and to the said agent of the demanding state.

The rights of the arrested person as so prescribed are, more-
over, considered to be of such significance that *N.J.S.A.*
2A:160–19 makes it a misdemeanor for an officer of the render-
ing state to deliver the arrested person to an agent for the

---

[1]In *Meechaicum,* the Tenth Circuit Court of Appeals held that where a
defendant is being held by the rendering state both to respond to its own
charges and pending extradition to another state, he is entitled to be con-
sidered for bail at least in respect of the state charges despite the issuance of
the governor's rendition warrant in the extradition proceeding. This theory of
bail is not applicable here since, as we were advised at oral argument, all
charges other than the Florida state charges have now been dismissed.

demanding state in willful disobedience of the procedures specified by *N.J.S.A.* 2A:160–18.

■ The foregoing statutory scheme, which is at the heart of the extradition law,[2] makes clear that the obligation of the rendering state to deliver the arrested person to the demanding state is no more absolute when the governor of the rendering state issues the warrant than it was when the rendering state first received the fugitive warrant from the demanding state. As we noted in *In re Cohen*, 23 *N.J.Super.* 209, 215–216 (App.Div.1952), aff'd o.b. 12 *N.J.* 362 (1953): "The executive warrant of a Governor is but *prima facie* sufficient to hold the accused and he is entitled to test the validity thereof by habeas corpus proceeding." We thus conclude that the rendering state's obligation to deliver the defendant does not become absolute until he has unsuccessfully exhausted his rights, including his habeas corpus rights.

■ It has never been suggested by any of the authorities that the federal constitutional extradition mandate is violated when a defendant is admitted to bail during the period between issuance of the fugitive warrant by the demanding state and issuance of the governor's warrant by the rendering state. We are satisfied that that is so because during that time period the rendering state is not obliged to comply with the demand. But it is also not obliged to comply with that demand, indeed it is prohibited from so doing, pending the conclusion of the habeas corpus proceeding. As a matter of the federal constitutional mandate, therefore, admission to bail during the pendency of the habeas corpus proceeding is no more inconsistent with the constitutional extradition obligation than is a pre-arrest warrant admission to bail.

Finding neither a federal constitutional impediment to post-rendition warrant bail nor a federal constitutional policy which

---

[2]The New Jersey provisions follow §§ 10 and 11 of the Uniform Law almost verbatim.

would be promoted by a prohibition thereof, we next consider the soundness of the *Lucas* view respecting the silence of the Uniform Law as to such bail. It is our conclusion that that silence neither was intended as a prohibition nor is reasonably construable as such.

First, it is obvious that the Uniform Law provides for pre-rendition warrant bail to insure that a defendant will be entitled to bail from the time of his arrest on the fugitive warrant. It is arguable that no special provision for bail after issuance of the governor's warrant was made because of the assumption that conditional release would be allowable as a necessary incident of the habeas corpus proceeding if the extradition were to be challenged. In this regard, we note that in 1980 the National Conference of Commissioners on Uniform State Laws approved a new Uniform Extradition and Rendition Act, 11 *U.L.A.* 121 (Supp.1985), superseding the Uniform Criminal Extradition Law. The Conference's prefatory note explains that one of the primary reasons for the new act is the need for simplification of the judicial hearing procedures following issuance of the governor's warrant. *Id.* Section 3–106(c) of the new act, *id.* at 136, replacing and superseding Section 10 of the current law (*N.J.S.A.* 2A:160–18), expressly provides that if a person arrested under a governor's warrant does not waive a judicial hearing, a hearing shall be immediately scheduled and "[t]he judge shall (i) release the person upon conditions that will reasonably assure availability of the person for the hearing, or (ii) direct a law enforcement officer to maintain custody of the person." Not only does the new act, therefore, resolve the bail question in favor of post-rendition warrant bail, but, curiously, the Conference comments to Section 3–106 do not even remotely suggest that the conditional release provision constitutes a change from the present Uniform Law. *Id.* at 136–137.

We are, moreover, persuaded that even if the silence of the present Uniform Law is not based on the assumption we have ascribed to it, its interpretation as a prohibition on bail after issuance of the governor's warrant is unwarranted in this

jurisdiction. First we regard it as well settled in this state that courts have the power both by statute and inherently to release conditionally a person contesting his confinement by way of a habeas corpus proceeding where that confinement is not the result of a criminal conviction which is the subject of the proceeding. *See N.J.S.A.* 2A:67–29. *And see In re Hague,* 104 *N.J.Eq.* 31, 35–40 (Ch.1929). *See also* cases collected in *Annot.,* "Court's power and duty, pending determination of habeas corpus proceeding on merits, to admit petitioner to bail," 56 *A.L.R.*2d 668 (1957).

We are also persuaded that as a matter of state law, bail is allowable by reason of the state constitution which affords the right of pre-conviction bail to all persons except those charged with capital offenses. *N.J.Const.* (1947), Art. 1, par. 11. The State argues that this provision does not apply after issuance of a governor's warrant since the rendering state then holds the arrested person not for trial of the underlying substantive charges but rather only for delivery to the demanding state. We disagree. In constitutional terms this is still a pre-conviction situation. Moreover, bail is being sought not in respect of the underlying charge, which is not the business of the rendering state, but rather in respect of the habeas corpus proceeding, which is very much its business.

We are aware of the customary observation of the cases following the majority view that the rendering state need not concern itself with pre-conviction bail since, upon delivery to the demanding state, the demanding state may then be presumed to accord bail in respect of the underlying charge. We regard this argument, however, as beside the point. In our view, the point is simply that once the habeas corpus writ has issued, the defendant's right to challenge his extradition in this manner is seriously compromised if he must remain incarcerated during the entire period of the challenge and the exhaustion of his right to appeal from any adverse order. *See State ex rel. Parton v. Jensen, supra,* 279 *N.W.*2d at 123, 124. And see

*Application of Carden, supra,* 635 *P.*2d at 346, in which the Oregon Supreme Court noted that

> [d]enying consideration for release to one challenging the validity of arrest under a governor's warrant could, in effect, deny many persons a meaningful right to contest the validity of the governor's warrant. A person accused of a minor offense in the demanding state could be imprisoned in Oregon for a lengthy period of time if he chooses to exercise his right to contest the validity of his arrest.

We are further satisfied that there is no countervailing purpose or federal mandate to be served by that compromise.

Finally, we find authority for admission to bail in *R.* 3:26–1(d) which provides that "where a person has been arrested in any extradition proceeding, he may be admitted to bail except where he is charged with a crime punishable by death." This rule makes no distinction between arrest prior to issuance of the Governor's warrant or as a result thereof. In our view, this rule is completely consistent with the state constitutional bail provision as we have interpreted it. We are also satisfied that it constitutes, at the least, a statement of inherent judicial power which is within contemplation of the Supreme Court's rule making authority.

We add, however, a cautionary note. Although we are satisfied for all of the reasons herein stated that the trial courts do have the power to admit a defendant to bail during the pendency of the habeas corpus challenge to extradition, we are also satisfied that the power must be most circumspectly exercised and with due regard for the Governor's ultimate obligation to deliver the defendant to the demanding state in the event of the failure of defendant's habeas corpus challenge. We agree with this observation of the Supreme Judicial Court of Massachusetts in *Upton, supra,* 439 *N.E.*2d at 1222–1223:

> Although we have concluded that bail may be granted in habeas corpus proceedings challenging rendition, we do not intend to say that bail must be granted. All of the normally relevant considerations bearing on bail are applicable. We have noted the statutory limitation on bail in those cases where the punishment in the demanding State is death or life imprisonment. Moreover, the Commonwealth's obligations to the demanding State should be recognized. It would be a rare case in which bail would be warranted when the

"fugitive" had escaped from custody in the demanding State or had violated the terms of his release on bail, parole, or probation. Even where the "fugitive" has not yet been convicted, bail should be granted only in circumstances in which it is reasonably certain that the Commonwealth will be able to fulfil its obligation to turn the "fugitive" over to the demanding State if he is unsuccessful in his habeas corpus challenge.

As expressed by the Connecticut Supreme Court, admission to bail creates the risk that the governor will not be able to deliver the defendant to the demanding state when finally compelled to. That risk, however, does not affect the court's power to grant bail but only the manner in which the power must be exercised. *See Carino v. Watson, supra,* 370 *A*.2d at 952.

We reverse the orders revoking bail. We remand the Basto and Carbone matters to the Superior Court of Essex County and the Palo matter to the Superior Court of Bergen County for reconsideration of the bail issue in conformance with this opinion.