IN THE MATTER OF FRANK A. BASTO.

IN THE MATTER OF MARTIN L. CARBONE.

IN THE MATTER OF CARL J. PALO, JR.

Argued September 23, 1986—Decided October 1, 1987.

*Carol M. Henderson,* Deputy Attorney General, argued the cause for appellant, State of New Jersey (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*Richard F.X. Regan* argued the cause for respondent Carl J. Palo, Jr. (*Hayden and Perle,* attorneys).

*Louis C. Esposito* argued the cause for respondent Martin L. Carbone.

 *Peter V. Ryan* argued the cause for respondent Frank A. Basto (*Ryan, Pedicini & Donnelly,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal involves the application of principles of extradition law not hitherto addressed by this Court. The issue is whether, pending a habeas corpus hearing and any appeal from the result thereof, a putative defendant (hereinafter "accused" or "extraditee") who has been granted bail after delivering himself into custody in New Jersey pursuant to a requisition warrant issued by the governor of the demanding state is eligible for bail after the governor of the rendition state has issued an arrest warrant. (The foregoing suggests that extradition law has its own nomenclature. This opinion will endeav-

or to acquaint the unconversant reader with the terms as they are used.)

Until the decision of the Appellate Division the law in New Jersey was that an accused was not bail-eligible in the stated circumstance. *See In re Lucas,* 136 *N.J.Super.* 24 (Law Div.), aff'd o.b., 136 *N.J.Super.* 460 (App.Div.1975), certif. den., 69 *N.J.* 378 (1976); *In re Thompson,* 85 *N.J.Eq.* 221 (Ch.Div.1915). The Appellate Division expressed its disagreement with *Lucas* and held that "the trial courts do have the power to admit a defendant to bail during the pendency of the habeas corpus challenge to extradition" after the issuance here of the governor's warrant. *Matter of Basto,* 205 *N.J.Super.* 233 (1985). We affirm the judgment below, although the basis for our decision—statutory interpretation—is narrower than that resorted to by the Appellate Division, and the scope of our holding, applying as it does only to nonfugitive extraditees, is more limited.

I

The respondents in this Court are Frank Basto, Martin Carbone, and Carl F. Palo. They are denominated "accuseds" or "extraditees" rather than "defendants" because they have not been charged with any offense in New Jersey. Rather, they were charged by the State of Florida—the "demanding" or "requisition" state—with the crime of conspiracy to commit murder and with attempted murder. As well, there were federal proceedings against them in both Florida and New Jersey. The Florida state charges are based on conduct of the accuseds while they were in New Jersey, not in Florida. There was no allegation, therefore, that the accuseds fled from Florida to avoid apprehension or that they for any reason sought refuge here—factors of critical constitutional and statutory significance. They are New Jersey residents with roots in their respective communities. Florida sought to extradite the three accuseds under the "non-fugitive" provisions of the relevant

statute, as appears below. The accuseds do not argue that Florida lacks jurisdiction to try them for the charges.

Although they were originally granted bail when they surrendered to New Jersey authorities, the accuseds suffered revocation of their bail following the issuance of an arrest warrant by the Governor of New Jersey—the "asylum" or "rendition" state. The trial courts (two of the accused appeared in Passaic County, the third in Bergen County) denied applications for release on bail pending their pursuit of relief by way of habeas corpus. Those separate courts considered themselves bound by *In re Lucas, supra,* 136 *N.J.Super.* 24, aff'd o.b., 136 *N.J.Super.* 460, certif. den., 69 *N.J.* 378. The Appellate Division granted leave to appeal, consolidated the separate appeals, expedited its consideration of the appeals, and reversed. We granted the State's motion for leave to appeal. 102 *N.J.* 401 (1986).

II

As it stands, the case is now moot. In March 1986, after the Appellate Division had handed down its opinion and after this Court had granted leave to appeal, the accuseds were ordered by the United States District Court for the Southern District of Florida to appear for arraignment on federal charges. When they appeared voluntarily in federal court, the Florida state authorities filed a detainer against them, and they were held in federal custody pending a bail hearing on the state charges. The Florida state court denied bail; consequently, the accuseds (defendants in Florida) chose not to post bail on the federal charges, and they remain in federal custody in Florida.

Despite this posture of the case we choose to decide the issue presented by the appeal. It is of some moment, is apt to recur, see, *e.g., In re Farrell,* 108 *N.J.* 335, 353 (1987), and given the very nature and pace of extradition proceedings, there is considerable likelihood of mootness, tending to frustrate appellate resolution of the issue. *See, e.g., In re Ballay,*

482 *F.*2d 648, 651 (D.C.Cir.1973); *Matter of Conroy,* 98 *N.J.* 321, 342 (1985). Moreover, it is important that we resolve the direct disagreement between the *Lucas* and *Basto* panels of the Appellate Division, at least to the extent that those decisions apply to nonfugitive extraditees.

### III

To prevent the states from serving, unwittingly or otherwise, as havens for fugitives from sister states, the United States Constitution provides for the rendition of fugitives. *U.S. Const. art.* IV, § 2; *see* Note, "Interstate Rendition And The Fourth Amendment," 24 *Rutgers L.Rev.* 551, 553 n. 13 (1970) [hereinafter "Interstate Rendition"]. Article IV, section 2 provides:

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

To implement this provision, Congress passed the Extradition Act of 1793, codified at 18 *U.S.C.* §§ 3182 to 3195 (now termed the "Federal Rendition Act"), which requires the asylum state to deliver a fugitive for whom a properly certified indictment is lodged by the demanding state. *California v. California Superior Court,* 482 *U.S.* ——, ——, 107 *S.Ct.* 2433, 2437, 96 *L.Ed.*2d 332, 340 (1987).

■ Because the Federal Rendition Act provided little specificity regarding rendition procedures, all states have enacted the Uniform Criminal Extradition Law ("Uniform Law" or "Act"). 11 *U.L.A.* 51 (1974). New Jersey's version of the Uniform Law is codified at *N.J.S.A.* 2A:160–6 to –35. For an excellent summary of many of the Act's principles in action, see *In re Cohen,* 23 *N.J.Super.* 209, 214–17 (App.Div.1952). The provision of particular import here is *N.J.S.A.* 2A:160–24, which reads:

Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, a judge or magistrate in this state may admit the

person arrested to bail by bond or undertaking, with sufficient sureties, and in such sum as he deems proper, conditioned for his appearance before him at a time specified in such bond or undertaking, and for his surrender, to be arrested upon the warrant of the governor of this state. [*N.J.S.A.* 2A:160–24.]

Thus, the Uniform Act as adopted in New Jersey provides specifically for bail consideration after arrest and prior to issuance of the New Jersey governor's warrant, save for cases in which the death penalty or life imprisonment are possibilities. At oral argument in this Court the parties disagreed on whether Florida treats the offenses with which these accuseds are charged as punishable by life imprisonment. There was no finding below on that point and it has not been briefed in any depth, nor does the State strenuously urge it as a ground of reversal. We are therefore disposed to reach the basic issue— the bail-eligibility of these accuseds—wherefore we assume away, as the parties appear content to have us do, the life-imprisonment-disqualification point. The precise issue, then, is whether, given the Act's specific provision for bail consideration between the time of arrest and the issuance of the governor's warrant, the Act's silence on the availability of bail after the governor's warrant has issued precludes bail for these accuseds in that circumstance.

The parties differ sharply on the significance of the Act's silence on this point. The State argues that the legislature's failure to provide for post-warrant bail reflects an intent to preclude it. The extraditees, on the other hand, contend that the provision of pre-warrant bail should not be read as exhaustive or as an attempt to exclude bail at a later stage. Endorsement of either view must be informed by the policies that underlie the Uniform Law.

The extradition procedure, in its most common form, can be separated into two stages. The first stage begins with a determination, frequently by the law enforcement officers of the demanding state, that the accused has violated the criminal laws of the demanding state and is now in a sister state. Often, officers in the asylum state will recognize the accused

from a wanted bulletin, and arrest him thereafter. "Interstate Rendition," *supra*, 24 *Rutgers L.Rev.* at 552. It is at this initial arrest stage that *N.J.S.A.* 2A:160–24 specifically allows for admission to bail.

The second and more formal stage of the extradition procedure begins with a request by the governor of the demanding state for rendition of the accused. *N.J.S.A.* 2A:160–11 specifies the form and contents of such a demand, which include: (1) allegations that the accused was in the demanding state at the time of commission of the alleged crime and thereafter fled from the state, and (2) an indictment, which "must substantially charge the person demanded with having committed a crime." On receipt of such a request, under *N.J.S.A.* 2A:160–10, "it is the duty of the governor of this state to have arrested and delivered up [the fugitive] to the executive authority of any other state."

The accused, after his arrest in the asylum state pursuant to the governor's warrant, is accorded rights under *N.J.S.A.* 2A:160–18. He shall be (1) taken before a judge of the criminal court who shall inform him of the demanding state's allegation of crime and request for rendition, (2) informed of his right to retain counsel, and (3) afforded a reasonable time within which to apply for a writ of habeas corpus if the prisoner requests the opportunity to "test the legality of his arrest."

The range of inquiry at the habeas corpus proceeding is severely circumscribed. The courts of the asylum state may do no more than ascertain whether the requisites of the Extradition Act have been met. *California v. California Superior Court, supra*, 482 *U.S.* at ——, 107 *S.Ct.* at 2438, 96 *L.Ed.*2d at 340–41. The United States Supreme Court had repeatedly held that extradition proceedings are not the appropriate forum for considering defenses or determining the guilt or innocence of the accused. *Biddinger v. Commissioner of Police*, 245 *U.S.* 128, 135, 38 *S.Ct.* 41, 43, 62 *L.Ed.* 193, 199 (1917); *see Michigan v. Doran*, 439 *U.S.* 282, 288, 99 *S.Ct.* 530, 534, 58 *L.Ed.*2d 521,

527 (1978); *Drew v. Thaw,* 235 *U.S.* 432, 440, 35 *S.Ct.* 137, 138, 59 *L.Ed.* 302, 308 (1914); *Pierce v. Creecy,* 210 *U.S.* 387, 405, 28 *S.Ct.* 714, 720, 52 *L.Ed.* 1113, 1122 (1908); *In re Strauss,* 197 *U.S.* 324, 332–33, 25 *S.Ct.* 535–537, 49 *L.Ed.* 774, 779 (1905). Inquiries going to defenses and guilt or innocence "are left to the prosecutorial authorities and courts of the demanding State, whose duty it is to justly enforce the demanding State's criminal law—subject, of course, to the limitations imposed by the Constitution and laws of the United States." *California v. California Superior Court, supra,* 482 *U.S.* at ——, 107 *S.Ct.* at 2438, 96 *L.Ed.*2d at 341. The judicial inquiry on a habeas corpus proceeding is limited to whether the extradition documents are on their face in order, whether the prisoner has been charged with a crime in the demanding state, whether the prisoner is the person requested for rendition, and whether the prisoner is a fugitive from the demanding state. *Michigan v. Doran, supra,* 439 *U.S.* at 289, 99 *S.Ct.* at 535, 58 *L.Ed.*2d at 527.

■ An important element, therefore, is that the accused be a fugitive from the demanding state. "Interstate Rendition," *supra,* 24 *Rutgers L.Rev.* at 556 ("fugitivity" is "implicit in the terms of the [Constitution's] rendition clause"). The test of "fugitivity" is whether the accused was in the demanding state when the alleged offense occurred and thereafter fled or was otherwise removed from that state. *Munsey v. Clough,* 196 *U.S.* 364, 374, 25 *S.Ct.* 282, 284, 49 *L.Ed.* 515, 517 (1905). The reason for this requirement is well stated in Justice Stevens's dissent in *California v. California Superior Court, supra,* 482 *U.S.* at ——, 107 *S.Ct.* at 2444–45, 96 *L.Ed.*2d at 347–48:

> The requirement that fugitivity be established nevertheless has some teeth to it; otherwise state boundaries would become mere markings in an atlas, and the demanding State could exercise criminal jurisdiction over a person anywhere in the Union regardless of the extent of that person's culpable connection with the State. (Footnotes omitted.)

Thus, where "fugitivity" has not been shown, rendition by the asylum state is not constitutionally mandated. *Munsey v.*

*Clough, supra,* 196 *U.S.* at 374–75, 25 *S.Ct.* at 284–85, 49 *L.Ed.* at 518.

The Uniform Act reflects this distinction as well. Although it is the "duty" of the governor to arrest and deliver up a fugitive requested by a sister state, *N.J.S.A.* 2A:160–10, "the surrender of a nonfugitive, unlike surrender of a fugitive, is within the discretion of the Governor * * *." *In re Mahler,* 177 *N.J.Super.* 337, 353 (App.Div.1981); *N.J.S.A.* 2A:160–14 (the governor *may* also surrender an accused demanded by another state even though accused was not in that state at time of commission of crime).

Prior to the Appellate Division ruling in this case, New Jersey followed the "majority" view in holding that bail was not available at the post-warrant stage. *State v. Sinacore,* 151 *N.J.Super.* 106 (Law Div.1977), overruled on other grounds, *State v. Johnson,* 167 *N.J.Super.* 64 (App.Div.1979); *In re Lucas, supra,* 136 *N.J.Super.* 24, aff'd o.b., 136 *N.J.Super.* 460, certif. den., 69 *N.J.* 378; *In re Thompson, supra,* 85 *N.J.Eq.* 221. See *Basto,* 205 *N.J.Super.* at 237–38 (collecting "majority" rule cases).

■ An important reason for the denial of post-warrant bail was provided by the United States Supreme Court in *Wright v. Henkel,* 190 *U.S.* 40, 23 *S.Ct.* 781, 47 *L.Ed.* 948 (1902):

> The demanding government, when it has done all that the treaty and the law requires it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and *the other government is under obligation to make the surrender;* an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.
>
> [*Id.* at 62, 23 *S.Ct.* at 786, 47 *L.Ed.* at 955 (emphasis added).]

Thus, the denial of post-warrant bail is premised largely on the constitutional obligation to render fugitives on a proper demand of a sister state. The failure to deliver up a fugitive requested by a sister state represents a direct affront to the rendition clause of the Constitution. In fact, so binding is a state's obligation under the extradition clause that the Supreme Court

recently overruled the long-standing principle of *Kentucky v. Dennison*, 24 *How.* 66, 16 *L.Ed.* 717 (1861), and held, contrary to *Dennison*, that federal courts have authority to compel performance by an asylum state of the mandatory, ministerial duty to deliver up a fugitive on proper demand. *Puerto Rico v. Branstad*, 483 *U.S.* ——, 107 *S.Ct.* 2802, 97 *L.Ed.*2d 187 (1987). Therefore, any state procedure that jeopardizes fulfillment of the state's constitutional obligation to its sister states must overcome a substantial presumption of invalidity.

◼ When the extraditee is not alleged to be a fugitive from the demanding state, however, those constitutional concerns are substantially diminished. As noted above, delivery of a *non*-fugitive is not constitutionally mandated, and under the Uniform Law the decision to render the accused reposes in the discretion of the governor. Thus, the failure to deliver the nonfugitive accused to the demanding state, although offensive to notions of interstate comity, is not a concern of constitutional magnitude.

◼ Because the drafters of the Uniform Act clearly understood the constitutional significance of the distinction between fugitives and nonfugitives, *compare N.J.S.A.* 2A:160–10 (fugitive rendition mandatory) *with N.J.S.A.* 2A:160–14 (nonfugitive rendition permissive), the distinction might properly inform an interpretation of the bail provision of the Uniform Act, *N.J.S.A.* 2A:160–24. We find that the silence of that provision was not intended to preclude the availability of post-warrant bail, at least for *non*fugitives, for whom return to the demanding state is not constitutionally required.

We extract additional support for this conclusion from the pre-warrant provision of *N.J.S.A.* 2A:160–24. Prior to the issuance of a formal request by the demanding state, the Constitution imposes no obligation on the asylum state to render the accused. *U.S.Const. art.* IV, § 2 (providing for delivery "on Demand of the executive Authority of the State from which he fled"). The drafters of the Uniform Law pre-

sumably concluded, then, that among the reasons for allowing bail at the pre-warrant stage is that the failure to deliver the accused is not yet, and may never become, a constitutional requirement. Forfeiture at that stage would not run afoul of the rendition clause of the federal Constitution.

That reasoning applies with greater force here. In the case of a nonfugitive, rendition will *never* be constitutionally required and therefore forfeiture will offend no constitutional stricture. At the pre-warrant stage for all extraditees, and at the post-warrant stage for nonfugitives, the only risk posed by forfeiture is to interstate comity. Given the identity of concerns, and the legislature's decision in light of those risks to provide for bail at the pre-warrant stage, we conclude that *N.J.S.A.* 2A:160–24 is properly construed to provide for bail in the case of nonfugitives at the post-warrant stage as well.

Additional insight into the drafters' intent might be gleaned from the revised version of the Uniform Law adopted by the National Conference of Commissioners in 1980. 11 *U.L.A.* 121 (Supp.1985). The Commissioners' version of the Uniform Law expressly provides for post-warrant bail. Section 3–106(c)(i). As the Appellate Division observed, the Conference comments to that section "do not even remotely suggest that the conditional release provision constitutes a change from the present Uniform Law." 205 *N.J.Super.* at 241. Although we need not determine the eligibility of a fugitive for post-warrant bail, we find the Commissioners' comments probative on the narrow question of legislative intent addressed here.

## IV

We underscore the limited nature of our holding: the Uniform Law contemplates the bail-eligibility of a nonfugitive extraditee after issuance of the rendition state governor's warrant. Accordingly, we leave for another day the broader question of whether an accused who has fled from the demanding state—a fugitive—is likewise eligible for bail in the same cir-

cumstances, be it by constitutional compulsion, operation of statute, force of Rule of Court (see *Rule* 3:26–1(d)), or as the result of an inherent power in the courts to grant bail.

■ In stating our conclusion, however, we repeat the admonition of the Appellate Division that "the power [to admit to bail] must be most circumspectly exercised * * *." 205 *N.J.Super.* at 243. This is so even though the extraditee is a nonfugitive rather than a fugitive and even though the rendition state governor's obligation finds its source in principles of comity rather than in a constitutional requirement. The fact remains that once the New Jersey governor has exercised discretion in favor of extradition, there is a solemn obligation to deliver up the extraditee if the habeas corpus application is unsuccessful. That a state's duty is rooted in comity rather than in the Constitution does not detract from the basic precept that bail should be granted, therefore, only when it is reasonably certain that that obligation will be fulfilled.

### V

So much of the judgment of the Appellate Division as reversed the orders revoking respondent's bail is affirmed. Inasmuch as respondents are confined in Florida, the order for remand is rendered moot.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal* —none.